SHRADER *v.* SHRADER.

[81 South. 227, In Banc.]

1. TRUST. *Resulting trust. Deed taken in husband's name.*
   Where land was purchased by a husband with his wife's money and the deed taken in his name when the understanding was that it should be taken in her name, in such case a resulting trust arose in favor of the wife.

2. SAME.
   In such case where the wife only furnished a part of the purchase money a resulting trust arose in her favor for the part so furnished.

3. RESULTING TRUST. *Estoppel to assert. Petition for letters of administration.*
   Where a man already wedded, married a second wife who was ignorant of the fact that he had another wife, and thereafter

purchased land in his own name, with his second wife's money and took the title in his own name in violation of an agreement to place the title in her name, she was not estopped from asserting a resulting trust in such lands either because after his death she filed a sworn petition in the chancery court averring that her husband died intestate, seized and possessed of such land, nor by her conduct in knowing that the deed had been taken in her husband's name, and in failing to file a seasonable action in court to compel a conveyance from her husband in his lifetime.

4. SAME.

In such case where the property so purchased was thereafter used as a homestead, making it appear unnecessary for the second wife to reform the deed in order to secure the property on her husband's death, the husband would be estopped after ten years of married life with such second wife from pleading the illegality of the marriage in any contest with such second wife over property rights, where the second wife had no knowledge during such time, that she was not her husband's lawful wife.

5. MARRIAGE. *Estoppel.*

Under the facts in this case as set out in its opinion, the court held that the first wife was estopped to lay claim to the property bought by the husband with the second wife's money on the ground of illegality of the second marriage.

APPEAL from the chancery court of Sunflower county. HON. E. N. THOMAS, Chancellor.

Bill by Addie Schrader against Emma Schrader. From a decree for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*J. B. Harris* and *Somerville & Somerville*, for appellant.

As is stated in the main brief filed on behalf of the appellant this case clearly falls under the authorities described as constructive trust arising out of fraud. We wish to detail here a few of the cases which we think cover the various phases of the present record.

We wish to first call the attention of the court to the very able and painstaking opinion found in the case of *Davis* v. *Cummins et al.,* which is reported in the 195 S. W. 752; all that we could say in support of the appellant and the justice of her case is said for us by the court in this case. In the Missouri case E. G. Davis went through the form of a marriage with Mary C. Davis and thereafter purchased property with her money, and the court declares a trust in her favor and against the heirs of the deceased, E. G. Davis, in the following language:

"It clearly appears that through fraud E. G. Davis acquired possession of the money and property of Mary C. Grimes while insolvent himself, converted the same to his own use, received and appropiated to his own use the rents and profits of her land, and with her said money and property purchased the five-seventh and six-seventh interest in said three hundred and thirty acres and took the title thereto in his own name. It further appears that he continued said fraud up to the time of his death and during said period induced her to believe and she did believe, that he was her lawful husband. If both Davis and wife were alive and she were suing him in equity to divest him of the title to said real estate, acquired by him under the circumstances aforesaid, it would be our plain duty to declare a constructive trust in her favor, to hold him as trustee *in invitum,* and to divest him of the title to the property acquired through her means. Appellants occupy no better position upon this record than would E. G. Davis, himself, if he were alive, and sued by respondents. *Philips* v. *Jackson,* 240 Mo. 100, 335, 144 S. W. 112; *Carey* v. *Griffin,* 73 N. Y. S. 766, 36 Misc. Rep. 469, (15 Key Number Series 2075 J.); *Michigan Trust Company* v. *Probasco,* 63 N. E. 255-259; *Batty* v. *Green,* 92 N. E. 715-7; *Pennington* v. *Acker,* 30 Miss. 161, Code 1857, article 24, page 336; Code 1871, section 1779; *House et al.* v. *Harden et al.,* 52 Miss. 867; Note in 87 A. S. R. 85.

We call the court's attention to two of the best recognized definitions of constructive trusts. We take these two definitions as quoted in 10 A & E. Encyclopedia of Law (1 Ed.), page 61; 2 Pomeroy's Eq. Jur., 616; 2 Story Eq. Jur. (13 Ed.), 604.

We respectfully submit that the decree of the chancellor should be reversed and a final decree rendered in the supreme court sustaining the cross-bill.

*S. E. Davis,* for appellee.

When the appellee in this case filed her petition in the chancery court of Sunflower county, to have the letters of administration which had been improperly granted to appellant in cause No. 2701, revoked, she set out her whole claim to the property of R. M. Shrader deceased, and the appellant was then fully advised as to her claim, and could have made her answer to that petition a cross-bill and asserted any claim which she may have had to the property involved in this case, but she did not see fit to do so, but elected to claim under him as his heir, and after having prosecuted that claim to a final termination, and having lost, she now comes back in this suit and tried to claim under an entirely different and inconsistent theory, and I respectfully submit to this court in all seriousness, that under the law, this cannot be done. She filed her answer in cause No. 2701 with all of the facts before her, except she did not know how this court was going to decide that case, and now since she has that information, she seeks to shift her position and take another route wholly different and inconsistent with the one she first took. Having elected what claim she would set up to this property, with all of the facts set before her, she is now bound by that election. In 16 Cyc. 785, the writer says: "Where a person has, with knowledge of the facts, acted or conducted himself in a particular manner, or asserted a particular claim, title or right, he cannot

119 Miss.—34.

afterwards assume a position inconsistent with such act, claim or conduct to the prejudice of another.''

But if by any chance this court should be of the opinion that the appellant is not estopped from taking an entirely different and inconsistent position in this suit from the one assumed by her in cause No. 2701, still on her own proof alone, accepted at its full face value, she is not entitled to have a trust declared in her favor on the land involved in this suit. When and under what circumstances does a trust either resulting or constructive arise? And what sort of proof is necessary to establish a trust of this character? In 39 Cyc., page 128, the writer says:

''A resulting trust must arise, if at all, from the state of facts existing at the time the legal title to the property is acquired, and cannot arise from matter coming into existence afterwards.'' *Bowman* v. *O'Riley,* reported in 31 Miss. 261; *Gee* v. *Gee,* 32 Miss, 190; *Gibson* v. *Foot,* 40 Miss. 788; *Mahoner* v. *Harrison,* 13 S. & M., 53; *McCarroll* v. *Alexander,* 48 Miss. 128.

I submit to the court, that all of the proof offered by appellant in this case falls far short of the proof necessary to establish her claim. In 39 Cyc., page 152, the writer says: ''A constructive trust cannot be established by mere preponderance of evidence, but must be established by evidence which is clear, definite, unequivocal, and satisfactory.''

And in the case of *Moore* v. *Crump,* reported in 84 Miss. 612, the court says: ''A constructive trust as a result of fraud, can be established only upon clear and convincing proof of such fraud.'' And in the case of *Logan* v. *Johnson,* reported in 72 Miss. 185, the court says: ''Where the existence of a resulting trust depends upon parol proof, the evidence must be clear, strong, unequivocal, and must establish the fact of the payment by the beneficiary beyond a reasonable doubt.

In the case of *Lofton* v. *Sterret,* reported in 2 So. 837, the court says: Where the testimony not only

fails to show that the complainant is the equitable owner of any definite interest in the real estate, but does show acts and conduct on his part inconsistent with a claim of such ownership as against the parties holding the legal title, the trust should not be decreed." *Logan* v. *Johnson,* reported in 16 So. 231.

The greater part of the argument of counsel for appellant and practically all of the authorities cited by him are based on the theory that the money used in paying for the land in controversy, belong to the appellant, but as their proof does not bear out their contention, and the chancellor having decided against them on that point, the authorities cited by them are not applicable. If the land had been acquired by R. M. Shrader by means of his fraudulent pretended marriage with appellant, or had acquired her funds to pay for the land by fraudulent means, their contention would be correct and the authorities cited by them would apply. But the chancellor has decided that the land was not bought with appellant's funds, and it certainly was not acquired by the fraudulent pretended marriage with appellant R. M. Shrader—who claimed this land from the day the deed was delivered to the day of his death, as his own land, bought with his own individual money; had it assessed to himself; paid taxes on it; cultivated it and sold the produce therefrom, all of which was well known to the appellant, who asserted no claim to it until long after the lips of R. M. Shrader and C. Avent from whom he had purchased it, and who were the only persons who knew the facts in reference to it, had been sealed in death; and the chancellor, by his decree, found the fact to be, that the land had been purchased by R. M. Shrader with his own individual funds, and that he was the legal and equitable owner of said land at the time of his death, and that said land has, by virtue of the statute of descent and distribution of the state of Mississippi, descended to appellee herein as his sole heir at law.

Counsel for appellant also dwells on the fact of how she has been treated, and holds her up before this court as an emblem of purity, virtue and injured innocence. That line of argument might be very beneficial before a country jury, but will have no weight with this court. There is another side to this sad story. The appellee herein has lost the love, care, companionship and support of her lawful husband, R. M. Shrader, has paid the penalty of his misdeeds with his life, and all on account of the appellant in this case, who now seeks to add the finishing stroke by depriving the appellee of her property.

I respectfully submit to this court that this case should be affirmed.

Stevens, J., delivered the opinion of the court.

Appellee by bill in equity claims title to eighty acres of land in Sunflower county, asks that her title be confirmed, and that the claim of appellant be canceled as a cloud upon the alleged true title of the complainant, and prays for possession and for an accounting as to rents. The bill avers that the complainant is the lawful widow and sole heir at law of R. M. Shrader, deceased; that R. M. Shrader died seised and possessed of the lands in suit; and that, under the law of descent and distribution, complainant is now the sole owner.

The record presents the rival claims of the legal wife and the *de facto* wife of R. M. Schrader, deceased. From the pleadings and the proof it appears that R. M. Shrader was lawfully married to Mrs. Addie Ried, present appellee, in Shelby county, Ala., in May, 1900, and thereafter lived with her as his lawful wife for two or three years at Vincent, Ala.; that R. M. Shrader then deserted his wife, and moved to Sunflower county, Miss., where he passed himself off as a single man, and where he in due form intermarried appellant, then Mrs. Emma McDill, a widow. His marriage to appellant was

in pursuance of a license and in the form prescribed by statute.  After his marriage to appellant in January, 1905, Shrader lived with his Mississippi wife until June 30, 1915, the date of his death.  After his death appellant applied for letters of administration on his estate, and letters in the usual form were issued to her as administratrix.  Thereafter appellee, the Alabama wife, presented a petition to the chancery court asking that letters of administration to appellant be revoked, and that letters be issued to petitioner, and in this petition facts similar to those charged in the bill were presented to the court.  The chancellor, upon hearing, revoked the letters theretofore issued to appellant; but instead of issuing letters to the petitioner, the Alabama wife, the learned chancellor appointed the clerk of his court administrator.  From the decree of the chancellor appointing the chancery clerk administrator an appeal was prosecuted to this court, and the action of the chancellor approved, and the cause affirmed, as reflected by the opinion of this court in *Shrader* v. *Johnson,* 116 Miss. 467, 77 So. 301.

The lands involved in this suit constituted the homestead of R. M. Shrader in his lifetime, and after his death appellant continued in possession, and was in the actual possession of the land at the time this suit was instituted.  The present bill was met by an answer denying that the complainant was the lawful widow and sole heir at law, and denying the other material allegations of the bill, and her answer is made a cross-bill, in which it is charged with sufficient particularity the facts and circumstances under which cross-complainant intermarried with R. M. Shrader; charged that cross-complainant was induced to marry R. M. Shrader under the belief that he was a single man; that the lands in controversy were purchased with moneys advanced by cross-complainant; that cross-complainant is entitled to have the court decree a resulting trust in her favor, and that she be decreed the true and equitable owner of the

lands; and prayed, further, that complainant and cross-defendant by her conduct and silence is now estopped from making any claim to the premises, and that equity should decree cross-complainant the true owner. The cross-bill was answered, and upon issue thus joined much testimony was taken on both sides. On final hearing the chancellor decreed in favor of appellee, and from this decree the Mississippi wife appeals.

The proof shows that appellant was the widow of one J. A. McDill, and as such inherited from McDill certain live stock, money, and other personal property; that McDill had some children by a former marriage, and that appellant had some children by her marriage with McDill. At the time R. M. Shrader appeared near Lynn, in Sunflower county, Shrader possessed nothing in the way of property, one witness observing that he was "in poverty's oath." He gained the confidence of appellant; represented himself as an unmarried man, and appellant in fact married him under the firm belief that he was a single man. In 1908 appellant and R. M. Shrader negotiated for the purchase of the eighty acres of land, the subject of this litigation, and the land was purchased from C. M. Avent for nine hundred dollars, two hundred dollars cash, the balance to be paid in four installments of one hundred and seventy-five dollars each. The proof shows that appellant expected the deed to be executed in her favor, and that she furnished the initial cash payment of two hundred dollars. While the testimony for both sides took a somewhat wide range, there is but one conclusion to be drawn from all the testimony in the case upon the issue as to who furnished the consideration for the purchase of the lands. We are of the opinion that the testimony shows beyond dispute that the title to the land was to be in the name of appellant; that appellant furnished two hundred dollars cash; that the next five hundred dollars was paid from timber taken from the lands themselves, and that the last payments were paid by

appellant; that the details of the deal were seen after
by R. M. Shrader, and in closing the deal Shrader took
title in his own name and contrary to his understanding
with appellant; that when appellant discovered this
fact she protested, consulted friends in reference to the
matter, and that thereupon Shrader admitted that the
consideration had been furnished by appellant and
promised to have the deed changed. The testimony
further tends to show that appellant's friends advised
her it made no difference who held the legal title; that
the lands would be the homestead, and upon Shrader's
death appellant would inherit the lands. Believing that
Shrader was her lawful husband, having no intimation
to the contrary, appellant, it appears, felt secure, and
took no action to have the deed changed, and even at the
time of Shrader's death fully believed that these lands
would become her individual property. But after Shrad-
er's death appellee suddenly appeared upon the scene,
asserted that she was the lawful wife, that there had
been no divorce, and that by virtue of the laws of
Mississippi she is the sole owner.

It would protract this discussion very much to state
in detail the testimony of the several witnesses. It is
sufficiently shown that appellee was lawfully married
to R. M. Shrader in Alabama, and no divorce had ever
been granted. It is equally well established that ap-
pellant innocently married R. M. Shrader, and that she
has been the subject of gross imposition and fraud.
The proof shows that appellant was a virtuous and
hardworking woman, and that her labors continued dur-
ing the time of her marriage; that she and her children
were making their own living at the time Shrader ap-
peared and ingratiated himself into her confidence;
that Shrader had nothing at the time the lands were
purchased; that appellant and her children cleared the
land, and put it in a state of cultivation; that she per-
formed well her domestic duties and continuously toiled
in the garden and fields. We quote portions of the

testimony to illustrate the force and positive character of the testimony relied upon by appellant.

J. N. Nicholson knew the parties well, lived in the same neighborhood, knew the lands and some of the details in reference to the purchase thereof. He states, among other things:

"Miss Emma had some stock and she sold it to get the money to buy the land. The stock was formerly McDill's stock."

That he knew the live stock which appellant sold, and had personal knowledge of sales of this stock, amounting to about one hundred and twenty-five dollars. He states without qualification that the two hundred dollars was paid from proceeds of the sale of the cattle. He also states that, when the deed was taken in the name of R. M. Shrader, "Miss Emma raised a howl because she had paid the money and Bob took the deed to him." According to Nicholson, Shrader was not an industrious man—"ate up more than he ever made;" stated to the witness "he was not going to work when he had somebody cooking for him;" that "Bob never paid anything for it (the land);" that "the timber on the land was sold for five hundred dollars," etc.

The statements of witness J. H. Love are equally as strong. He testifies:

"Mrs Shrader paid for it because he did not have anything to pay for it with. He told us that Emma paid for the land. She made the first payment and I know she made the last payment. I heard him say that she furnished the money to make the payments on the land. The timber paid for a part of it, and she put up the money for the rest. I have heard him say that different times."

These two witnesses were disinterested, having no possible interest in the result of this litigation. Love further states:

"Mrs. Shrader and her children did most all of the work in clearing up the land;" that "I heard him

promise her that he would have her name put on the deed. He told her that it didn't make no difference whether her name was on it or not."

Mr. Powell, a prosperous farmer and former justice of the peace, one who had no interest to serve, stated that Shrader "did not have a thing in the world—nothing, you might say; a pauper." He further testifies that McDill had a bunch of cattle, a pair of mules, and a mare or two; that he made the division of the cattle among the heirs himself.

Hugh Young, a farmer with no interest to promote by any statements of his on the witness stand, testified to a conversation between Shrader and the appellant to the effect that they were selling the cattle to get money with which to buy the land, stated that the second payment was made from the timber, and that Shrader so acknowledged a number of times.

All witnesses recognized Shrader as indifferent and of no account—one thoroughly insolvent. All bear testimony to the good character and industrious habits of appellant. The only fair inference from the testimony is that appellant was as much the breadwinner as the thriftless husband with whom she lived.

The proof then justifies the claim of cross-complainant of a resulting trust in the lands here involved. One familiar illustration of a resulting trust is in those cases where lands have been bought with the wife's means and title taken in the husband's name. In the note to *Haney* v. *Legg,* 129 Ala. 619, 30 So. 34, 87 Am. St. Rep. 81, it is stated, "A resulting trust in favor of a wife is presumed from the purchase of property by her husband with her money and the taking of title in his name;" citing authorities. No legal reason has been offered why a trust should not be impressed in the present case. The learned chancellor entered a general decree in favor of appellee. We fully recognize the force which his decree would have upon issues of fact, but on the present record we believe the chancellor was

manifestly wrong. The only question is the sufficiency of the proof. It is true the exact details are not in evidence as to the last payment upon the lands. There can be no possible question of the fact that appellant furnished the first payment of two hundred dollars, and that the timber thereafter paid five hundred dollars of the moneys.

This only left two hundred dollars of the purchase money, and under any view of the facts, as stated by the supreme court of Alabama in *Haney* v. *Legg, supra,* —"It is not indispensable, however, that the whole of the purchase money should have been paid out of the funds belonging to the complainant. If any portion of it was her money, a resulting trust arises in her favor to the extent of the sum so used."

But the facts, we think, are sufficient to show that appellant paid the total consideration and that Shrader so acknowledged. It is certain that he took the title in violation of his agreement with appellant, and that he promised to have the deed changed. A prominent feature of this case is the admitted fact that appellant at all times was innocent while her reputed husband was guilty of gross wrong and fraud. Appellant is the innocent victim of this fraud. Her trusting nature was violently imposed upon. Shrader married this good woman of Mississippi under false pretenses, and daily repeated his deception, and continued to assume a fraudulent attitude toward her until his death.

It is suggested that appellant is estopped now to claim these lands, first, because she filed a sworn petition in the chancery court of Sunflower county averring that R. M. Shrader died intestate, seised and possessed of certain personal property, as also the lands now in dispute; secondly, by her conduct in knowing that the deed had been taken in Shrader's name, and in failing to file a seasonable action in court to compel a conveyance from Shrader in his lifetime.

There is no merit, we think, in either contention. The petition for leters of administration was the usual *pro forma* petition, one required by the statute, and any reference to real estate was unnecessary. The primary object of administration is to take charge of and administer the personal property and pay debts. There is no contention that the real estate was charged with the debts of Shrader's creditors. Furthermore, it is shown without dispute that the petition for letters was sworn to at the time when appellant still firmly believed that she had been lawfully married to R. M. Shrader, and before the facts under which appellee's claim was propounded had been fully developed. It is intimated that the previous decisions of this court in the controversy between these parties over the right to administer practically adjudicated the present controversy. This cannot be. The court on the former hearing decided nothing as to the rival claims of the parties. The chancellor simply appointed the chancery clerk administrator and his action this court on appeal affirmed. Appellant is in no way estopped. If she had entered into the marriage contract with R. M. Shrader knowing at the time that he was a married man with a living wife, or if she had ascertained this fact after marriage, and continued notwithstanding to cohabit with Shrader as his wife, there would be some ground for estoppel as against her. But the estoppel is more against R. M. Shrader and those who take from him, except *bona-fide* purchasers for a valuable consideration without notice. The legal status of parties who for a long period of time have lived as husband and wife, believing that they were lawfully married, was elaborately discussed in *Johnson* v. *Johnson,* 1 Cold. (Tenn.) 626. It is there stated:

"And the principle is equally familiar, that where persons have represented themselves to be married, or have assumed the relation of husband and wife, cohabiting and holding themselves out to the public as

such, though not in fact married, they will, when it is sought to charge them with any of the civil liabilities growing out of that relation, be conclusively presumed to sustain such relation to each other, and will not be permitted to disprove or deny the marriage. 1 Greenleaf's Ev. sections 27, 207. It is laid down by Starkie that in an action against husband and wife it is sufficient to prove the marrige *de facto* by evidence of cohabitation, acknowledgment, or reputation, and they cannot prove in defense that they were not legally married. 2 Starkie's Ev. 691, 3 Am. Ed., 2 Salk. 437; *Divoll* v. *Leadbetter,* 4 Pickering's R. (Mass.) 220.

"Whether or not such persons can acquire rights as against others, it is clear that others may acquire rights against them. And the principle of estoppel, upon which this doctrine rests, and which is based upon principles of morality as well as of public policy, must be held to apply equally to goth parties; the woman in such case is no more privileged to commit fraud or crime than the man.

"And if they are estopped, as to third persons, why shall they not, as against each other, in all civil cases, be also precluded from gainsaying the marriage? Do not the same reasons of morality and policy apply in the one case as in the other? And more especially should they be held to be estopped, as between themselves, when either is seeking to disturb or defeat rights which may have been acquired by the other, either directly or indirectly, on the faith of the marriage."

To the same affect are the announcements of the supreme judicial court of Massachusetts in *Batty* v. *Greene,* 206 Mass. 561, 92 N. E. 715, 138 Am. St. Rep. 407, and the supreme court of Missouri in *Davis* v. *Cummins* (Mo.), 195 S. W. 752. The fraud of Mr. Shrader may well be described in the following language of the Massachusetts court in *Batty* v. *Greene*:

"Day by day and hour by hour did this woman, by maintaining in appearance the relation of a lawful wife, renew and repeat this fraud. The concealment was continuous, and the fraud was as continuous as the concealment. It existed at the time of the marriage, and at the respective times when Batty contributed to the common fund. And this suit is not based upon the concealment when the marriage ceremony took place, but upon that existing when Batty parted with his property. In every proper sense the property, although not obtained at the time the concealment began, was obtained by the concealment existing at the time it was passed to the offending party and as the direct consequence of the resulting fraud. See *Morrill* v. *Palmer,* 68 Vt. 1, 33 Atl. 829, 33 L. R. A. 411."

And the true status of the second Mrs. Shrader, both as to a resulting trust and the alleged estoppel, is strikingly similar to that of Mary C. Grimes, the claimant in *Davis* v. *Cummins,* and is well indicated by the following language of the Missouri court:

"It clearly appears that through fraud E. G. Davis acquired possession of the money and property of Mary C. Grimes while insolvent himself, converted the same to his own use, received and appropriated to his own use the rents and profits of her land, and with her said money and property purchased the five-sevenths and six-sevenths interests in said three hundred and thirty acres, and took the title thereto in his own name. It further appears that he continued said fraud up to the time of his death, and during said period induced her to believe—and she did believe—that he was her lawful husband. If both Davis and wife were still alive, and she were suing him in equity to divest him of the title to said real estate, acquired by him under the circumstances aforesaid, it would be our plain duty to declare a constructive trust in her favor, to hold him as trustee *in invitum,* and to divest him of the title to the property acquired through her means. Appellants occupy no

better position upon this record than would E. G. Davis himself if he were alive and sued by respondents."

There can be no question, then, under the authorities mentioned and under sound principles of equity and good morals, that as between R. M. Shrader and his Mississippi wife the former would be estopped, after the lapse of more than ten years, during which time he and appellant openly lived together as husband and wife, now to plead the illgality of the marriage in any contest over property rights.

To what extent this estoppel may be applied as against Shrader's former wife or next of kin there may be some question. There is room on the facts of this case to conclude that appellee had knowledge of the fact that her husband had married in Sunflower county, Miss.; that she possessed this information for many years; that she was not interested in pursuing or seeking any relief against her husband; that she resumed her former name of Mrs. Addie Ried, and by that name was known upon the church register and by her intimate friends; and that she refused to correspond or to inquire as to her husband, because she had no interest in him, and did not even want to convey the impression that she was inquiring after him. Witness J. W. Powers, who married the daughter of appellee, and with whom appellee made her home at Vincent, Ala., testified that he visited Sunflower county in 1912, and went to the home of R. M. Shrader, and there ascertained the fact that he was openly living with appellant; that he conversed with Mr. Shrader, but had no conversation with appellant, and was careful to conceal from appellant his relationship to Shrader or the facts in reference to his former marriage. It is interesting to note that Powers bears testimony to the innocence and industry of appellant, who according to his statement, was "working in the garden at her home." Mr. Shrader asked Powers "to say nothing about it" when he returned to Alabama, and witness "agreed not to mention it;" that is, the

fact that Shrader and appellant were then living to-
gether in Mississippi. But this testimony shows clearly
that a member of appellee's family had actual knowledge
of the facts, and that appellee could easily upon inquiry
have ascertained the same facts. In this regard the
case, while not so strong upon the facts, resembles
somewhat the case of *Woodson* v. *Colored Grand
Lodge of Knights of Honor of America,* 97 Miss. 210,
52 So. 457. But the decision of the present case need
not rest upon estoppel or the authority of the Woodson
Case. Here appellant only contends for her own
property. To deny appellee any rights in the home-
stead purchased with appellant's means would ac-
complish what appellee admits would be a righteous
result. On cross-examination she was asked, in reference
to any property of appellant, "You do not seek any
of her property, nor do you want to take from her any
property that was ever hers? A. No; of course, I
would not want anything that was hers." Under the
law and controlling facts, the property sued for should
be awarded to appellant. Any other result, we think,
would be contrary to sound principles of morality, would
intensify and place a premium upon the double dealing
and fraud of R. M. Shrader, deceased, and would deny
a remedy for a just and equitable right.

*Reversed, and decree here for appellant.*

ETHRIDGE, J. (dissenting).

I find myself unable to agree either to the law
announced or to the facts stated by the majority in its
opinion. If we should accept the facts as stated, still,
in my judgment, under the authorities in this state,
there is a misapprehension of the law which wrongfully
deprives the appellee of her rightful property. I desire,
however, to state more fully the facts, and to state
certain facts that have been ignored by the majority
opinion, which in my judgment makes the decision
wrongful.

R. M. Shrader was killed on or about the 30th day of June, 1915, in Sunflower county, Miss., by the son of appellant. On the 10th day of July thereafter the appellant filed a petition in the chancery court of Sunflower county wherein she alleged that R. M. Shrader departed this life intestate, and that at the time of his death he was seised and possessed of eighty acres of land, more or less, describing the lands now in controversy, and personal property consisting of three mules, worth about six hundred dollars, and averred that the land was the homestead of the deceased, and that two of the mules were exempt property, and that the petitioner (appellant) was the sole heir of the deceased, and above twenty-one years of age, and a proper and suitable person to administer upon his estate, and prayed for letters of administration. This petition was sworn to by the appellant. Letters were granted, and appellant qualified as administrator, and thereafter filed an inventory in which she listed items of personal property, consisting of a buggy, plows, farming implements, blacksmith tools, live stock, and household goods, and ten dollars and seventy-five cents cash, and a debt due by J. H. Love for one hundred twenty-six dollars and eighty-five cents, the personal property amounting to five hundred and nineteen dollars and seventy-five cents, and the debt which was collected as stated in the inventory amounting to one hundred and twenty-six dollars and eighty-five cents, making a total of six hundred and forty-six dollars and sixty cents. This inventory was duly sworn to on the 20th day of November, 1915.

The appellee on the 22d day of September, 1915, filed a petition in the chancery court to remove Mrs. Emma Shrader as administrator, alleging that she, Mrs. Addie Shrader, was married to R. M. Shrader on the 10th day of May, 1900, in Shelby county, Ala., and was his legal wife at his death, and that no divorce had been obtained, and that she and Shrader lived

together from the 10th day of May, 1900, until August, 1904, when Shrader without cause deserted her, and without any divorce entered into a pretended marriage with Mrs. Emma McDill, commonly known as Mrs. Emma Shrader. She further alleged that the pretended marriage between appellant and R. M. Shrader was null and void, and alleged that R. M. Shrader left an estate in Sunflower county, Miss., worth eight thousand dollars, and that she, Addie Shrader, was entitled to the administration upon said estate, and alleged that Mrs. Emma Shrader caused letters of administration to be issued to her by the chancery court of Sunflower county, and that she, the said Emma Shrader was in possession, and that said letters of administration were granted the said Emma Shrader within thirty days from the date of the death of R. M. Shrader, and that Emma Shrader had no right of title to said property nor to administer the said estate, and that she was appointed under a misapprehension of the facts, and that petitioner, Addie Shrader, was entitled to the administration, and prayed for the removal of said Emma Shrader and the granting of letters of administration to herself.

Mrs. Emma Shrader in that proceeding filed an answer in which she denied that Addie Shrader was the lawful wife of R. M. Shrader, and denied the allegations of the petition as to the marriage and living together of R. M. Shrader and Addie Shrader; denied that the marriage between herself and Shrader was void, and denied that Mrs. Addie Shrader was the sole heir of R. M. Shrader or the widow of said Shrader; denied that the estate left by R. M. Shrader was worth eight thousand dollars, but alleged in the answer that his estate consisted of personal property worth about six hundred and fifty dollars, and eighty acres of land, the value of which she does not know, but believes to be worth about three thousand, two hundred dollars. This answer was duly sworn to, and states on

oath that to the best of her knowledge, information and belief that all the facts contained in the above and foregoing answer are true and correct as therein stated.

Evidence was taken on the issues thus made over the contest of administratorship, and the chancellor removed Mrs. Emma Shrader as administrator, the decree reciting that the court—''being now fully advised in the premises, is of the opinion that the proof in said cause established the fact that said R. M. Shrader and Addie Shrader were legally married at Rehobath Church, in Shelby county, Ala., on the 10th day of May, 1900, and that they afterwards lived together as man and wife for at least one year, and were never divorced; and that the said Addie Shrader was the legal wife of said R. M. Shrader at the time of his death, and is now his sole heir at law, and is entitled to the relief sought by her said petition.''

And decreed the removal of Emma Shrader as administrator, but declined to appoint Addie Shrader, because she was a nonresident of the state of Mississippi, and appointed the chancery clerk as a suitable person to administer the estate. This decree was appealed from, and in the case of *Shrader* v. *Johnson,* 116 Miss. 467, 77 So. 301, this court affirmed the action of the chancellor.

Thereafter the appellee, Addie Shrader, filed a bill in the chancery court alleging that she was lawfully married to R. M. Shrader, and never had been divorced from him, and was his sole heir at law, and as such that she was entitled to inherit his property, and alleged that he died intestate in Sunflower county, Miss., and that he was seized and possessed in fee simple, in addition to other property, of the lands in controversy, describing same. She further alleged that Emma Shrader was in possession of said land, and had rented the said land and collected rents thereon, and that she pretended to be the widow and heir of said Shrader; and if she claimed any other right, title, or

interest in the estate of R. M. Shrader, deceased, that complainant was not advised of the same, and that in fact and in truth she owned no right, title or interest in said land, and that complainant was the rightful owner of said land, and that defendant, Emma Shrader, was holding the complainant out of possession and claiming to be the owner of said land, and casting a cloud upon complainant's title to said land, and is collecting rents and appropriating them to her own use; and prayed for process and answer not under oath, and for relief for the cancellation of the claim of defendant to the said land as a cloud on her title, and for an accounting for the rents and profits. The bill was sworn to.

The appellant answered, denying that the complainant, Addie Shrader, was the lawful wife of R. M. Shrader; denied their marriage; denied that Shrader deserted the complainant; denied that Shrader left without obtaining a divorce, and denied that he entered into a pretended marriage with defendant, but admits that defendant was married to Shrader and was commonly known as Mrs. Emma Shrader; denied in this answer that the deceased, Shrader, was at the time of his death the owner of the land in controversy; and denied that deceased owned any other property of any real character; and denied that the property of deceased was inherited by complainant; and denied that complainant had any title to the land in controversy, but admitted that she, the defendant, had been in possession since the death of Shrader of the lands in controversy; but denied that she was claiming the land as the widow, heir at law, or successor of the deceased; and denied that she has claimed to have inherited the property from Shrader, but admitted she was collecting some rents from said lands; but denied that Shrader ever had any right, title, or interest to the lands; and denied that complainant was entitled to a personal decree against her; and by way of cross-bill alleged that

she is the widow of J. A. McDill, late 'of Sunflower
county, Miss., and that McDill departed this life about
May 1, 1901, leaving defendant a good deal of property,
consisting of live stock and cattle; that McDill left
several children; then alleged that some ten months
after the death of McDill, long years before August,
1904, that Shrader appeared near Lynn, Sunflower
county, Miss., and she became acquainted with Shra-
der in the fall of 1901; that she, the defendant, oper-
ated certain lands during that year and succeeding
years, and that Shrader was employed by her during
the years of 1902 and 1903, and was gradually employed
by the defendant more and more from year to year;
that in the year 1901 Shrader was employed by D. O.
Ringold, a prominent planter of Sunflower county; that
in 1902 Shrader operated a gin on the Powell place in
the vicinity of Lynn, in said county; in the years 1903
and 1904 Shrader worked with the defendant making
the crop, helping her and her children in the field, and
prior to that time had boarded with her, and they were
married in January, 1905, and that deceased never
left said vicinity for any appreciable time; and that
Shrader always claimed to be single, and that the
marriage between the defendant and Shrader was con-
tracted in Bolivar county, Miss., on January 5, 1905,
and was valid and legal. She alleged further that the
eighty acres of land were purchased entirely with her
money and is her property, and that the money came
from the sale of certain cattle formerly the property
of the said McDill, and from the sale of these cattle
two hundred dollars was realized to purchase said
eighty acres of land, and said Shrader paid the money
for the said land, and either fraudulently or negligently
took title in his own name, and the second payment was
made from the sale of timber growing on said land
amounting to five hundred dollars, and that by reason
thereof she was entitled to have a trust declared in
said lands for her benefit, and she was the rightful

owner; that when she first learned that the deceased had purchased the property in his own name she remonstrated with him, and at that time she thought it would be proper for her to file suit to have the title changed from said decedent to her, but she was advised that the property would descend to her in case of death and could not be sold without her consent.

Complainant answered the cross-bill, denying the allegations, and pleading the suit first instituted over the administration of the estate between the parties to this suit as *res adjudicata* of the issues in this suit and as an estoppel against the defendant. The complainant introduced depositions of numerous parties living near Vincent, Ala., showing that Shrader was lawfully married in Alabama to appellee in 1900, and that he lived with her in Alabama until the summer of 1903. A photograph of Shrader was introduced in evidence, and a daughter and son-in-law of Addie Shrader testified that he is the same person who lived in Sunflower county, Miss., and that the son-in-law saw him a few days before his death in Sunflower county, and that Shrader admitted that he was living with Mrs. Emma Shrader, and requested said witness to say nothing about it, the depositions of the proper officers having custody of divorce records were introduced to prove that no divorce proceedings were instituted by R. M. Shrader against Addie Shrader in said courts where Mrs. Addie Shrader had lived, and no divorce appeared on the records of the chancery court of Sunflower county, Miss.

The deed to the land in controversy was made to R. M. Shrader, and recited a payment of two hundred dollars in cash, and the further consideration of seven hundred dollars to be paid by R. M. Shrader as evidenced by his promissory notes of even date with the deed, each for one hundred and seventy-five dollars, due and payable on the 1st day of November, 1909, 1910, 1911, and 1912, respectively, and reserved a vendor's lien upon the land

described therein to secure the payment of said notes. The deed was dated November 12, 1908, and signed by ' C. M. Avent. The deed was acknowledged on November 20, 1908, before Willis Brumfield, a notary public.

The notes, with the exception of the date of maturity, which was different in each note as above stated, read as follows:

"$175.00          Belzoni, Miss. Nov. 12, 1908.

"Nov. 1st, after date, I promise to pay to C. M. Avent, or bearer, at Bank of Belzoni, Belzoni Miss. (Branch of Grenada Bank) one hundred and seventy-five dollars with eight per cent. interest per annum from date until paid, value received; if this note is placed in the hands of an attorney for collection, the makers and endorsers hereof agree to pay the holder thereof an attorney's fee of ten per cent. upon the amount due; demand, protest and notice waived.

[Signed] R. M. SHRADER.

"For purchase money W. half of N. W. quarter, sec. 25, 21, 4, Sunflower Co."

The complainant and cross-defendant introduced the record in the administration proceedings in evidence, and the record so introduced contains three different statements under oath, by the defendant and cross-complainant, that the deceased owned the property therein referred to and involved in this suit. The defendant and cross-complainant introduced a great number of witnesses, most of whom were swift to swear in direct examination in favor of the appellant, but on cross-examination testified in answer to detailed questions to facts showing they knew nothing of the matter except the sale of some cattle and statements made by Mrs. Emma Shrader, and admissions by the deceased, R. M. Shrader, that he had agreed to take title in the name of Emma Shrader, and that she furnished the money from the sale of cattle for the purpose of buying the land. Of course the statements made by Mrs. Emma Shrader, much of which was not made in the presence of the

119 Miss.]                    Dissenting opinion.

deceased, are wholly inadmissible, except in so far as they were made in the presence of the deceased, and, reduced to its last analysis, amount to nothing more than a mere unsworn admission on the part of Shrader that he had agreed to take title to the land in the name of Mrs. Emma Shrader, and that she furnished the money to pay on the land of the extent, under the most favorable view to the appellant, of four hundred dollars; five hundred dollars of the purchase money being paid from a sale of timber growing on the land, and only two hundred dollars being paid at the time of the making and delivery of the deed. Both Shrader and Avent were dead, and no one testified as to what passed between Avent and Shrader when the deed was executed and the money paid. The deed and the notes signed by Shrader were introduced in evidence, and show that the land was purchased on credit with the exception of the two hundred dollars cash payment, and that Shrader's credit secured by vendor's lein on the land reserved in the deed was the consideration for the deed other than the two hundred dollars. The legal title went to Shrader. Shrader's personal credit was pledged, and five hundred dollars of the purchase money was paid from the land itself, at a time when the legal title was invested in Shrader. *

In my opinion the chancellor had a right to hold the appellant estopped by the admissions of her sworn pleadings in the former suit, said sworn admissions being made at a time when the appellant knew the facts as well as she knew them now. The issue as to who was entitled to administration necessarily involved the ownership of the property and the issue as to the validity of the marriage between Shrader and these respective litigants.

The appellant having solemnly sworn in that case, where the facts were admissable in evidence and pertinent to, and controlling of, the litigation there between the same parties, growing out of the same subject-

matter, that R. M. Shrader owned the property involved in this suit, it should be considered as *res adjudicata* of the rights involved here, because the chancery court could only grant letters of administration on a sworn allegation by the applicant for administration that the deceased died without a will, or without naming an executor in a will, and siesed of property to be administered. If the appellant was the rightful wife (as the chancellor found she was not), she would have had a right to administer, because the statute gives the wife, or heir, the exclusive right within the first thirty days after death to administer. This right is a valuable right, and certainly, when the parties litigated that issue in that contest, the admissions made under oath in the pleadings therein are binding, and cannot be disputed, unless they were under circumstances of mistake. Certainly a party should not be permitted to go into the courts of the country and make solemn oath in proceedings requiring an oath, with full knowledge of the facts to which they deposed, and thereafter be permitted to change the position so taken. So it seems to me that the majority opinion is radically wrong in not taking cognizance of these facts squarely presented for decision and affirming the chancellor.

In the second place, it is well established in the authorities of this state that a trust cannot be established where the sale is on credit.

"A resulting trust in land will not be created in favor of one whose funds have been used in paying the purchase money, where the land was purchased on a credit." *Bowman* v. *O'Reilly*, 31 Miss. 261.

The quotation above made was approved in *McCarroll* v. *Alexander*, 48 Miss. 137. In the first syllabi in the case of *McCarroll* v. *Alexander* the following rule is stated:

"If one buy land in the name of another, and pay the consideration money, the land will be held by the grantee in trust for the benefit of him who advanced

the money.  So, also, if there has been only a partial advance of the money, the trust will result *pro tanto;* the foundation of the trust in such cases being that the property really belongs to him whose funds have paid for it.  But the facts creating the trust must exist at the time of the conveyance.  For it is the money which has gone to the vendor, as an inducement to the conveyance, that creates the equity.''

If the majority opinion had limited its holding to creating a trust to the extent of two hundred dollars, with interest thereon, I should not have dissented, notwithstanding the inconsistent position taken in the former case, because I could have been convinced that actual justice had been accomplished, though somewhat in defiance of the rules of law.

In the case of *McCarroll* v. *Alexander,* in the second syllabi, the following rule is established: ''After the legal title has been conveyed, the application of another's money to pay notes, for purchase money creates no such trust in favor of the other.  The trust must attach, if at all, at the time of the conveyance.''

So under this rule it would be impossible to establish a trust in favor of the appellant in the deferred payments.  In the opinion at page 136 of 48 Miss. it is stated:

''The grantee who paid nothing out of his own funds, and incurred no obligation for the price, fills but a nominal place in the transaction, and is really the medium only through whom the estate comes beneficially to him whose money or means have paid for it.

''If, therefore, the trust springs up at all, it must attach at the time the title is conveyed to the nominal grantee.  For it is the money which has gone to the vendor, as the inducement for the title with which he parts, that creates the equity in favor of him who advances it. [Citing authorities.]

''After the legal title has been conveyed to the grantee, the application of another's money to take up

outstanding obligations for the purchase money does not confer upon such person a trust in the land, which will so interest him in the estate as that it can be established as to enable him to draw to it the legal title or any part of it, If a trust results and attaches at all, it must be at the time when the conveyance is made. *Alexander* v. *Tams,* 13 Ill. 225. When the funds of a third person have been advanced and applied to the payment of the purchase money subsequent to the conveyance, if thereby any charge or lien for reimbursement exists, it cannot be successfully asserted against a bona ,fide purchaser, whether under judgment or otherwise.''

The announcement in this case was approved in *Moore* v. *Moore,* 74 Miss. 65, 19 So. 953.

In *Gee* v. *Gee,* 32 Miss. 190, it was held that to constitute a resulting trust money must be paid at the time of the purchase.

In *Mahorner* v. *Harrison,* 13 Smedes & M. 53, it was held that in order to establish a resulting trust that the advance of the money by the party setting up the claim for a trust must precede the purchase; that subsequent payment will not raise the trust when it is denied by the alleged trustee.

In *Brooks* v. *Shelton,* 54 Miss. 353, it was said: ''The investment of one person's money in land, the title to which is made to ,another, creates a resulting trust only when the money is advanced, or agreed to be advanced, at or before the purchase.''

In *Hitt* v. *Applewhite,* 20 So. 161, it was held that a resulting trust in land does not arise in favor of a person lending to the purchaser thereof money with which to pay a portion of the purchase price, nor does such lender acquire any rights in the land by subrogation.

In *Gibson* v. *Foote,* 40 Miss. 788, it was held that to establish a resulting trust, where one employs the money of another in the purchase of real estate, and where there is no valid agreement' to purchase the

property with the trust money, it is necessary to show that the money at the time of the purchase was the fund of the party claiming it, and that it was used in the purchase of the property. In that case the husband used the money of his wife, in the purchase of property, and the court held that the facts in that case were not sufficient to establish a resulting trust in favor of the wife or her heirs in the land purchased, and that the special promise did not create an express trust, because not in writing; that a promise or agreement to create an express trust must be in writing.

In my judgment all of these cases contain as strong or stronger equities in favor of the person seeking to establish the trust than does the record in this case.

Coming now to the degree of proof required to establish a resulting trust, I think, under the authorities of this state, the proof is wholly insufficient to meet the standard required.

In the case of *Moore* v. *Crump,* 84 Miss. 612, 37 So. 109, it was held that to establish a trust the evidence must be clear and convincing on the proof of the fraud. The opinion of this case was rendered by the senior counsel for appellant in the present case acting as special judge of this court. In the course of the opinion the court approved the following language from a previous decision of this court:

" 'We would not be understood as sanctioning the doctrine that an enforceable trust will arise from the mere breach of an oral promise, however solemn, to hold land in trust. There must be conduct influential in producing the result, and but for which such result would not have occurred—amounting, in view of a court of equity, to fraud—to save the case from the statute of frauds. A merely oral promise, and its subsequent breach, however disappointing and harmful, and though ever so reprehensible in morals, is not of itself enough to cause a court of chancery to declare a trust.' Counsel for the appellees base their contention upon the

doctrine set out in the *Ragsdale Case,* 68 Miss. 92, 8 So. 315, 11 L. R. A. 316, 24 Am. St. Rep. 256, and kindred cases. . We fully approve the doctrine. But the proof in the case at bar falls very far short of bringing the case within it. Under the authorities, not only must there be actual fraud on the part of the party sought to be held as trustee, but there must be clear and convincing proof of this fraud.''

In the case of *Logan* v. *Johnson,* 72 Miss. 185, 16 So. 231, the rule is laid down that, when the existence of a resulting trust depends upon parol proof, the evidence must be clear, strong, unequivocal, and unmistakable, and must establish the fact of the payment by the beneficiary beyond a reasonable doubt. In this case the opinion was written by COOPER, C. J., one of the ablest judges and clearest thinkers who have adorned this bench. In the course of the opinion he said:.

''If it were made certain by the testimony that the money derived from the sale of the cotton was the identical fund used in the purchase of the land, it would yet remain uncertain whether the trust, if any existed, was in favor of James Logan or of complainant. The evidence going to show that the money for which the cotton was sold was the money invested in the land is not satisfactory. Delaware Johnson states positively that it was, but he admits that some six or seven years elapsed after the cotton was sold before the land was bought, during all which time he states that the money was in his trunk. But he also says that he had, as he expresses it, 'a right smart' of his own money, and he does not explain how it was that the money derived from the cotton was so long kept intact. It is not pretended that it was for the purpose of investing it in a home for complainant, or that any purpose to that effect was formed until about the time the land was bought. Where it is necessary to prove by parol the existence of a trust, 'the evidence must be

clear, strong, unequivocal, unmistakable, and must establish the fact of the payment by the beneficiary beyond a reasonable doubt.' 2 Pom. Eq., section 1040.''

In the printed brief for appellant, on page 14, counsel for appellant says: ''We are not depending in this case upon showing a technical resulting trust. The trust here, if we are depending wholly upon that, would fall under the head of constructive trust arising out of fraud. In our view the solution of the case depends upon certain well-settled elementary principles of universal application, so familiar and well established that it was not necessary for us to burden the court with citation of numerous decisions. We are, therefore, quoting largely from Mr. Pomeroy, who we think is recognized by this court as an established modern authority on the principles of equity jurisprudence. This case falls squarely in that broad field of equity jurisprudence relating to actual fraud and estopped. We take it that it is not necessary to discuss the question of actual fraud, as it has been established by decree of the court below that Shrader at the time he pretended to marry appellant was the husband of the appellee.''

In the oral argument counsel for appellant placed his reliance for reversal mainly upon what he termed the principles of natural justice, and the fact that Shrader had fraudulently induced the appellant to marry him under the belief that he was a single man, and that, by reason of his having lived with the appellant for ten years, the appellee ought not to be permitted to take this property, and this seems to be the leading factor in influencing the reversal of this case though the court attempts to put it upon the ground of trust.

It is a familiar maxim that hard cases make bad law. It is not infrequent in trial courts that sympathies, emotions, and a flood of tears sweep aside the barriers of the law; but in this court, the final and supreme judicial authority of the state, I have always considered that the court was immune from these influences, and con-

stituted a judicial ''Gibralter,'' against which the winds of sentiment and waves of emotion would beat in vain; that this court administered justice according to the law; that it was not responsible for the facts invovling hardships, and did not make law, but accepted the law from the legislature and the common law.

Inasmuch as there is no possessory writ by which the wife can reach out and recall to her possession the erring or straying husband; inasmuch as she can neither maintain a *habeas corpus,* writ of replevin, ejectment, or unlawful detainer, to secure his possession; and inasmuch as he has the liberty of roaming whereso'er he will—I fail to see any ground for applying the doctrine of marriage by estoppel or right to a husband by adverse possession. It seems that some of the courts have fallen into this error, and held the lawful wife estopped to claim her legal rights in somewhat similar circumstances, but they surely must have been operating under a missapprehension of the law.

In the evidence as stated above, the only competent evidence as to the money of the appellant being used is an unsworn admission by the deceased that such money was furnished and this is offset by the sworn admission of the appellant that the property in question belonged to the deceased, and these sworn admissions were solemnly made in the courts of the country when the appellant was fully informed as to the facts upon which she now predicates her right to relief.

The chancellor had a right to find on the conflict of evidence for the appellee, and did so. There is much material conflict in the evidence as to when Shrader came to Mississippi. Some of the witnesses for the appellant claim he was in Mississippi from 1897 to the date of his death, in 1915. The appellant herself says she met him in Mississippi in 1901, and that he lived with and worked for her (prior to their marriage) in 1902, 1903, and 1904. The evidence is completely contradicted by a cloud of witnesses from Alabama who swear that

Shrader was in Shelby County, Ala., from 1900 to the summer of 1903.

It is a familiar rule of law that triers of fact have a right to disregard the entire testimony of a witness or witnesses who knowingly and corruptly swear to material facts falsely. In other words, where a witness has deliberately committed perjury on one material fact, the triers of fact are not compelled to accept his evidence as to any part of the testimony of such witnesses. It is manifest that some of the testimony amounted to willful, corrupt swearing on the part of the witnesses, and the chancellor had a better opportunity of determining which witness or witnesses testified to falsehoods, and his determining of the credibility of the witnesses ought to be binding in this court. Some of the witnesses for the appellant are her kinsmen, and therefore interested, others are her friends and neighbors, and it is manifest to my mind that their sympathies for the appellant colored their testimony, and that they made the evidence as strong as it could possibly be made for her.

I deem it unnecessary to comment on the authorities cited in the main opinion from courts outside of Mississippi, for the reason that the decisions of our own court fully cover the law of the case. However, the strongest cases cited in the majority opinion only go to the extent of imposing a trust on the property to the extent of the payment of the original purchase money.