FORD *et al. v.* AMERICAN HOME FIRE INS. CO.

(In Banc. Jan. 12, 1942. Suggestion of Error Overruled, Feb. 23, 1942.)

[5 So. (2d) 416. No. 34772.]

Wells, Wells, Lipscomb & Newman, of Jackson, for appellants.

Culkin, Laughlin & Thames, of Vicksburg, for appellee.

Argued orally by **W. R. Newman, Jr.**, for appellants, and by **John Culkin**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

One McGee owned the furniture and equipment and was the operator of a business known as the Tip-Top Sandwich shop in or near Vicksburg. It was under a chattel mortgage to Fisher, payments on which were past due. McGee became ill and was unable either to continue the business or to pay the mortgage, and he surrendered and delivered the property to his mortgagee in consideration of his release from the debt; and thereafter Fisher was dealt with as the owner. One Jack Ford desired to acquire the business and all the personal property connected therewith, and along in September, 1939, he arranged with Fisher for its purchase; but Ford had no money, and it was thereupon also arranged that Ford's wife, appellant herein, would furnish the money necessary to make the first or down payment, as well as the subsequent payments, and that she would supply the money for the purchase and installation of additional furniture and equipment, which were installed, and all this she

did with the further arrangement that Ford would conduct the business as his wife's agent, and that all business licenses should be taken in her name, that the bank account should be kept in her name and that all checks should be signed by her, and this, too, was done.

And all the aforementioned was understood by Fisher, but when he later made out the bill of sale for the property, retaining title as security until the balance of the purchase money should be paid, he made it to Jack Ford instead of Mrs. Ford. This bill of sale was dated November 18, 1939, and was immediately filed for public record. About that time Ford called in the agent of appellee company, who was fully authorized to execute policies of fire insurance, and requested that a policy be issued on the said personal property, and in the name of Mrs. Ford, as the insured, it being stated to the agent at the time by Ford that this was desired for the reason that it had been the money of the wife which had been put into the business. An inventory of the property amounting to an estimate of about $3,600 was delivered to the agent, and the agent personally inspected the property. The agent asked no questions about the title, or about any encumbrances or liens, and nothing was said to him about the title or ownership other than as above mentioned, and no statement was made to him about any encumbrances or liens. No written application was requested or made.

The policy was issued on November 27, 1939, for $2,800. The property was totally destroyed by fire on the night of January 18, 1940. The policy contained the usual printed provisions that the contract would be void "if the interest of the insured be other than unconditional and sole ownership or if the subject of the insurance be personal property and be or become incumbered by a chattel mortgage." The insurance company denied liability, because of said provisions, and upon the trial of the action against it to recover on the policy the court, at the close of the testimony for the insured, granted a peremptory charge in favor of the defendant, and from the judgment entered the insured has appealed.

Under the stated facts and except as to the Fisher lien, the wife was the equitable sole owner of the property here in question. We said in Shrader v. Shrader, 119 Miss. 526, 537, 81 So. 227, that a resulting trust in favor of a wife is presumed from the purchase of property by her husband with her money and the taking of title in his name. This presumption has a strengthened basis in the position of trust and dependence which the wife ordinarily occupies in respect to her husband; and while the presumption is rebuttable, it is to be observed that in the case now before us there was no rebuttal, but, on the contrary, a confirmation of the presumption. See the text and the elaborate references to the cases 26 Am. Jur., pp. 730-1, sec. 104.

And while the Shrader case and most of the others speak of trusts in land, the rule applies also to any property which may be the subject of a present transfer by way of devise or bequest, or gift or sale. A. L. I. Rest. Trusts, sec. 74, Comment b.

It follows from what has been said that, at the time of the issuance of the policy of insurance to her, the wife had such an equitable title as would have then enabled her by a bill in chancery to draw unto herself the unconditional legal title, and such an equity is a sufficient compliance with the policy condition as to sole and unconditional ownership. 4 Appleman Insurance Law, sec. 2458, and cases cited in the notes; Groce v. Phoenix Ins. Co., 94 Miss. 201, 207, 48 So. 298, 22 L. R. A. (N. S.) 732; Phoenix Ins. Co. v. Bowdre, 67 Miss. 620, 635, 7 So. 596, 19 Am. St. Rep. 326.

The property was admittedly encumbered in part by a lien in favor of Fisher for the balance of the original purchase price; and we shall concede, but without so deciding, that the lien present in this case was one within the definition of a chattel mortgage applicable to such a policy, and we shall also lay aside the fact that the lien was upon only the original property and not upon any of the new or additional installations; and we do this

because we are of the opinion that the great weight of modern authority sustains the text found in 4 Couch on Insurance, p. 3170 as follows:

"As a general rule, the issuance of a policy of insurance without inquiry as to encumbrances on the property insured, or requiring written application, waives any policy provisions with respect to encumbrances, especially if the insured makes no statements or stipulations in reference thereto, and has no knowledge that such information is material or that the risk would have been rejected had insurer known the facts, the theory being that, by issuing the policy without inquiry, the insurer assumes the risk of existing encumbrances and waives any conflicting provisions of its policy which is printed in a common form without reference to specific cases." See also the text and the numerous cases cited thereunder in 29 Am. Jur., pp. 498-9, sec. 620, and 26 C. J., p. 318.

We believe that the rule as above stated is just and wholesome; we align ourselves with it, and we are, therefore, of the opinion that upon the record as it now appears before us the peremptory charge should not have been given.

Reversed and remanded.