## Lewis *et al. v.* Ladner *et al.*

(Division A. May 25, 1936.)

[168 So. 281. No. 32141.]

474

Davis & Davis, of Purvis, and T. J. Wills, of Hattiesburg, for appellant, Edward Hines Yellow Pine Trustees.

**Parker & Shivers,** and **J. B. Mayfield,** all of Poplarville, for appellants, Goodyear Yellow Pine Company and Lemuel Ladner.

**U. B. Parker,** of Wiggins, for appellees.

478

480

Argued orally by **T. J. Wills** and **H. H. Parker**, for appellant, and by **U. B. Parker**, for appellee.

**Smith, C. J.,** delivered the opinion of the court.

The appellants built a logging road on, and were cutting timber from the E. ½ of the S. W. ¼ and the N. W.

¼ of the S. E. ¼ of section 13, township 4 south, range 15 west, in Pearl River county; the appellees claiming to be the owners of the land, exhibited an original bill against them, praying that their claim to the ownership of the timber on the land be canceled, that they be enjoined from maintaining and operating the logging road, for damages for the cutting of the timber, and injury to the land from the building and operation of the logging road. The case was tried on bill, answer, and proof, and the decree was in accordance with the prayer of the bill.

Lemuel Ladner, the husband of Belle Ladner, the appellee, owned the S. W.¼ of the S. W. ¼ and a ten-acre strip of land of equal width across the entire south end of N. W. ¼ of S. W. ¼ and two acres of land in the S. E. corner of the N. ½ of S. ½ of N. W. ¼ of S. W. ¼ measuring 70 yards north and south by 140 yards east and west, all being in section 13, township 4 south, range 15 west, containing 52 acres more or less, on which he lived and which constituted his homestead.

The Edward Hines Yellow Pine Trustees owned a large body of wild and uncultivatable land, a part of which was the E. ½ of the S. W. ¼ and the N. W. ¼ of the S. E. ¼, section 13, township 4 south, range 15 west. Ladner partially inclosed this land which adjoined that owned by him, and used it as a pasture for cattle. The Edward Hines Yellow Pine Trustees sold the land to the Goodyear Yellow Pine Company, and in 1931 they, together, filed a bill in equity in the Federal District Court against Ladner, praying that his claim to the lands be canceled. Mrs. Belle Ladner was not made a party to this suit.

The case was settled by an agreement under which a decree was rendered canceling Ladner's claim to the land. This agreement provided for the payment of a cash compensation to Ladner, and for the conveyance

to him of one hundred twenty acres of cut-over land, to be selected by him. About the time of the rendition of this decree of the Federal District Court, Ladner and his wife were divorced, and he executed to her a deed to the fifty-two acres of land owned by him, describing it as hereinbefore set forth. The deed then continued, "together with all improvements and appurtenances thereon or thereunder belonging, including all rights of reversion to roadways, timber, and other timber rights, easements, etc., now owned or which may at any time accrue to me as a result of my ownership of said lands."

Ladner then moved to Louisiana, and some time thereafter he selected the E. ½ of the S. W. ¼ and N. W. ¼ of S. E. ¼, section 18, township 4 south, range 15 west, the land here in controversy, as the land to be conveyed to him under his agreement with the Yellow Pine Trustees and the Goodyear Yellow Pine Company. The latter company thereupon executed to Ladner a deed to the land so selected by him, reserving to itself and its assigns the timber growing thereon, with the right to enter the land, cut and remove the timber, and build necessary logging roads over and across the land therefor. Afterwards the Goodyear Yellow Pine Company built a logging road on the land and was proceeding to cut the timber therefrom when this suit was filed.

The appellants' contentions are:

First. The deed from Lemuel Ladner to Belle Ladner does not convey the land here in controversy.

Second. The decree of the Federal District Court canceling Ladner's claim to the land is res judicata of the appellees' claim thereto.

Third. The evidence does not disclose that Lemuel Ladner was in adverse possession of the land for ten years claiming it as his own.

The conclusion we have reached as to the first of these questions is decisive of the case, and the facts have been

set forth only in so far as they bear thereon. The deed from Lemuel Ladner to Belle Ladner does not describe the land here in controversy, but the appellees' contention is that the language of the deed, hereinbefore set forth, indicates that it was Ladner's intention to convey not only the fifty-two acres of land therein specifically described, but also the land here in controversy. They say that this language of the deed, construed in the light of the circumstances surrounding its execution, indicates such an intention on the part of Lemuel Ladner. The specific language of the deed alleged to indicate this intention on the part of Lemuel Ladner is the words "including all rights of reversion to roadways, timber, and other timber rights, easements, etc., now owned or which may at any time accrue to me as a result of my ownership of the lands."

If land can be described and conveyed by this language, as to which we express no opinion, it must be included therein by the use of the abbreviation "etc." for the term "et cetera." This term has no well-defined meaning; and if any meaning is to be given it here, that meaning must be "other things of like character." 21 C. J. 1255. Assuming for the purpose of the argument that this meaning can be here given it, it may be that timber and land are of like character; for timber enters into and is embraced in the word "land." Under this assumption the clause may be read as if written, "All rights of reversion to timber, land, and other timber rights, easements, etc., now owned or which may at any time accrue to me as a result of my ownership of the lands." The conveyance then is "of all rights of reversion to land." Ladner had no right of reversion to this land. He either owned it in fee or he had no interest therein. But if it can be said that the deed does not convey simply rights of reversion to land, but land itself, the title to which accrued, or would accrue, to Ladner as a result of his ownership of the land conveyed,

the result would be the same. The land in controversy in no way accrued to Ladner as such a result. The title thereto, if such be had, rested solely on adverse possession with which his ownership of the land conveyed was in no way connected, except that he was in possession of both tracts. His subsequently acquired title was by deed, the execution of which in no way resulted from his ownership of the land he here conveyed. It may be that Ladner intended to convey the land in controversy (however, he denies that he did so intend); but his deed does not indicate such an intention, and there is nothing therein that justifies a resort to the circumstances of its execution for its interpretation.

The appellees, therefore, are without title to, or interest in, the land, and their bill of complaint should have been dismissed.

Reversed, and bill dismissed.

### On Suggestion of Error.

**Smith, C. J.**, delivered the opinion of the court on suggestion of error.

The decree of the court below was heretofore reversed, and the appellee's cause dismissed, 168 So. 281. The appellee now suggests that we erred in so doing.

The opinion then rendered set forth the facts of the case then and now pertinent hereto.

The appellee says, first, that while the deed executed to her by her husband, Lemuel Ladner, was one of the bases for the cause of action she here presents, it was not indispensable thereto, for another basis thereof is that the land in question constitutes a part of her husband's homestead, which homestead right she, as the wife, has the right to protect in a court of equity; and, second, that there is a mistake of fact in the statement in our former opinion—that "about the time of the

rendition of this decree of the Federal District Court, Ladner and his wife were divorced, and he executed to her'' the deed hereinbefore mentioned.

The bill of complaint specifically alleges that the deed from Lemuel Ladner to the appellee conveyed the land to her in fee simple. The court below so held, and based its decree thereon, and an examination of the brief filed by her counsel on the former hearing discloses that such was her contention, although reference is made therein to the fact that the land constituted Lemuel Ladner's homestead. We will assume for the purpose of the argument that the bill alleges facts presenting, under its prayer for general relief, the right, if any, of the appellee to protect this homestead right by a bill in equity.

We were in error in stating that the appellee and her husband, Lemuel Ladner, were divorced. What occurred was that in 1932, while the case referred to was pending in the federal court, or just after the decree therein was rendered, which is immaterial, the appellee filed a bill in the court below against her husband, Lemuel Ladner, setting forth his failure to support her, and praying for an allowance against him therefor. In October, 1932, a decree was rendered thereon in accordance with the prayer thereof. In June, 1933, the deed from Lemuel Ladner to the appellee, hereinbefore referred to and dealt with in our former opinion, was executed, and Ladner removed to the state of Louisiana, where he has thereafter continuously resided. This error of fact in no way affects our former opinion.

The questions presented by the suggestion of error then are:

1. Is the land in question a part of Lemuel Ladner's homestead? In deciding this question, it will be necessary for us to determine (a) whether the federal court decree canceling Ladner's claim to the land is res judicata of his title, although the appellee, his wife, was not a party thereto; and if not (b), did Ladner acquire

title to the land by adverse possession; if he did, then (c) did it cease to be his homestead when he removed therefrom without intention of returning thereto, although the appellee continued to live thereon?

2. Has the appellee lost any homestead right she may have had in the land?

We will pretermit any discussion of clauses (a) and (b) to question 1 and come at once to clause (c) thereof and question 2. Assuming then for the purpose of the argument that the land was a part of Lemuel Ladner's homestead when he and his wife separated in 1933, did it continue so to be after his removal therefrom without having returned thereto, or having any intention so to do? Under our homestead statutes one's homestead is the land on which he lives and which is within the provisions of section 1765, Code of 1930, which reads, in part, as follows: "Every citizen of this state, male or female, being a householder, and having a family, shall be entitled to hold exempt from seizure or sale, under execution or attachment, the land and buildings owned and occupied as a residence by him or her," etc. This homestead right continues only so long as the owner thereof continues to reside on the land, "unless his removal be temporary, by reason of some casualty or necessity, and with the purpose of speedily reoccupying it as soon as the cause of his absence can be removed." Section 1776, Code of 1930. Lemuel Ladner, having removed from the land without any intention of returning thereto, thereby abandoned his and the appellee's homestead rights therein, unless the appellee's continued residence on the land prevented Ladner's abandonment of the homestead becoming effectual. This fact might be material, as to which we express no opinion, in determining whether or not Ladner's abandonment of the homestead became effectual, if it did not appear that the appellee consented to Ladner's removal therefrom.

The deed from Lemuel Ladner to the appellee, executed in June, 1933, and dealt with in our former opinion, was made by him and accepted by the appellee in lieu of the provision made for the appellee's support in the decree of the court below, rendered in October, 1932, and specifically provides, after conveying the land therein described, that "this conveyance is made from myself to grantee, my wife, by way of compromise and settlement of all claim for alimony both temporary and permanent, suit money and attorneys fees inuring to my said wife or which may accrue in her favor, it being the intent and purpose of this conveyance that it is made in full settlement and satisfaction of any and all claims which she may now have or may hereafter have on account of such suit and as alimony or such claim against me on account of the marital relationship and is accepted by the grantee for said purpose and as such full and final settlement." This deed, the circumstances under which it was executed, and what was then done by the parties thereto, clearly indicate that the parties agreed to live separate and apart, and by continuing to live on the land so deeded to her the appellee necessarily consented to the removal of her husband, Lemuel Ladner, therefrom.

There is another reason, somewhat akin to the above, as to why the appellee cannot complain of the entry by the appellants upon this land. They entered thereon under permission from Lemuel Ladner so to do, given long after his separation from the appellee pursuant to the deed hereinbefore set forth, which permission to enter the land, though given by Lemuel Ladner alone, is valid, for he was not then living with the appellee. Section 1778, Code of 1930; Board of Mayor and Aldermen of Town of Booneville v. Clayton, 155 Miss. 428, 124 So. 490.

The suggestion of error will be overruled.