HOWELL *v.* GENERAL CONTRACT CORPORATION

No. 40249 January 7, 1957 91 So. 2d 831

*Alexander, Feduccia & Alexander,* Cleveland, for appellants.

*William Harold Cox,* Jackson, for appellee.

RoBERDS, P. J.

On June 10, 1955, General Contract Corporation, appellee, which, for brevity, we will call complainant, filed the bill in this cause against Bill Howell Motor Company, a corporation, which we will call Howell Motor Company, and against Bill Howell and his wife Mrs. Betty H. Howell as individuals.

The bill alleged that in the years 1952 and 1953 the Howell Motor Company had an agency for, and was engaged in, the sale of automobiles at Cleveland, Mississippi; that complainant was in the business of financing automobile agencies; that the complainant and Howell Motor Company entered into a written agreement under which complainant would purchase from Howell Motor Company, under terms detailed in the agreement, contracts and notes which the purchasers of automobiles would execute to Howell Motor Company for the unpaid purchase prices of automotive vehicles sold to such purchasers by Howell Motor Company. In other words

this was the usual automobile dealer's refinance arrangement. It also averred that Bill Howell individually had guaranteed payment to complainant of all of the debts arising under this arrangement, and that the total of such debts approximated $14,053.86, which the Howell Motor Company and Bill Howell had refused and failed to pay. The bill exhibited some seventeen conditional sales contracts and purchase money notes which had been purchased by complainant under this arrangement. The bill also averred that Mrs. Betty H. Howell was personally indebted to complainant in the approximate amount of $2,495.46, balance owing on a conditional sales contract and note for the unpaid purchase price of an automobile Mrs. Howell had purchased from the Howell Motor Company, and which contract and note had been purchased by and transferred to complainant.

The bill further alleged that Howell Motor Company was then out of business and was insolvent.

It then averred that Bill Howell, on December 20, 1954, was the owner of a certain house and lot in the City of Cleveland, Mississippi, and that on that day he executed a deed undertaking to convey the title to said property to Mrs. Howell; that this conveyance was without consideration and it was made with the intent to, and it did, defraud creditors, including complainant.

Howell was not served with personal process and he did not answer. Nor did Howell Motor Company answer.

Mrs. Howell answered, saying, in effect, she was not informed as to the various business matters existing between Howell Motor Company and Bill Howell and complainant. She admitted that Howell Motor Company was out of business; admitted she had purchased the automobile from Howell Motor Company and had executed the conditional sales contract and note for the purchase price. She admitted that Bill Howell had executed to her a deed to the Cleveland property but contended that it was a homestead; also that Mr. Howell

was indebted to her and he had the right to convey her the Cleveland property free of claims of his creditors, and that, in addition, he held title to the Cleveland property as trustee for her; denied the conveyance was intended to, or did, in fact, defraud creditors. She also claimed to own certain personal property, such as shades, dishwasher, stove, washing machine, etc., which were in the house when the Cleveland property was deeded to her by Mr. Howell. She also said that on December 15, 1954, she and Mr. Howell had entered into a separation agreement and that he had, by virtue of said agreement, conveyed her the Cleveland property, which was then their homestead. She denied that complainant was entitled to subject the property to payment of the debts owing to it as set out in the bill.

Mrs. Margaret Murphey Norman intervened in the cause. She asserted that Mr. and Mrs. Howell, on May 28, 1955, entered into a written contract with her under which she agreed to purchase and they agreed to sell to her the Cleveland property for the sum of $28,500, including certain household and kitchen equipment, as described in the contract. The purchase price was to be paid in cash after deducting $11,848.66 secured by a deed of trust against the property. She asserted she was ready and willing to carry out this agreement and that she was in the position of an innocent purchaser for value. She asked that the contract be carried out. We do not further detail the circumstances surrounding this purchase agreement because all parties gave tacit consent to the carrying out of the arrangement.

The chancellor decreed that Howell Motor Company and Bill Howell were indebted to complainant in the sum of $14,035.96 and $500 attorney's fee. He rendered a personal decree against Howell Motor Company for that sum. He did not enter a personal decree against Howell because service of process was not had upon him and he did not appear, but he did decree that the net

proceeds of the sales of the vehicles here involved be applied as a credit upon the amount found to be owing complainant. He rendered a personal decree against Mrs. Howell for the sum of $2,165, balance owing complainant on the automobile she had purchased from Howell Motor Company, this amount to be credited with the net proceeds of the sale of the automobile covered by her contract and note. He held that the Cleveland property was not the homestead of Mr. and Mrs. Howell and that Howell did not hold title thereto as a trustee for Mrs. Howell, and that the conveyance of this property to Mrs. Howell was a fraud upon complainant as a creditor of Mr. Howell. He decreed that the sale of the Cleveland property to Mrs. Norman be carried out, and the net proceeds be applied to the debt found to be owing complainant after credit thereon of the net proceeds of the repossessed automobiles, and the payment of real estate dealer commissions.

From this decree Mrs. Howell alone appeals here. She does not here contest performance of the purchase arrangement with Mrs. Norman.

She does urge on this appeal (1) that the cause should be reversed and remanded because the chancellor excluded the deposition of Bill Howell; (2) that the conveyance to her of the Cleveland property was legal and valid, free of any claim of complainant, because (a) Howell held title thereto in trust for her, (b) that the conveyance was for a valuable consideration, and was not fraudulent as to complainant, and (c) the property was a homestead; (3) that the chancellor wrongfully held that the Chrysler Airtempt conditioning unit was a fixture and part of the realty.

Complainant-appellee contests these contentions. We will discuss and decide them in the order stated.

When the case was tried Mr. and Mrs. Howell were residing in Shreveport, La. As stated, Mr. Howell was not served with personal process and he made no

appearance as a party to the lawsuit. His deposition was taken. Complainant made a motion to suppress the deposition on the main ground that the issues were complex and that justice could not be done without his personal appearance as a witness. The learned chancellor sustained the motion and suppressed the deposition. We cannot disturb the holding of the chancellor for the reason that the deposition was not offered in evidence; it does not appear in the record; we do not know what the testimony was. We have several times held that error in exclusion of evidence cannot be considered where it does not appear of record and it is not shown what the evidence was. Mississippi Central Railroad Company v. Robinson, 106 Miss. 896, 64 So. 838; Lizana v. Edward Motor Sales Co., 163 Miss. 266, 141 So. 295; G. M. & N. R. R. Company v. Willis, 171 Miss. 732, 157 So. 899; Shaw v. Bula Cannon Shops, Inc., 205 Miss. 458, 38 So. 2d. 916.

 Mrs. Howell says the conveyance of the Cleveland property to her by Bill Howell December 20, 1954, vested in her the legal title to the property because Bill Howell had title thereto as trustee for her. There was no express trust and nothing of record to give notice of any claim the title was being held in trust. It is said a constructive trust arose out of these circumstances: On December 31, 1943, Mrs. Mecklin, the mother of Mrs. Howell, conveyed to Mrs. Howell a lot in Whitehaven, Tennessee. The Howells constructed a house on the lot. They occupied the property as a homestead. On June 14, 1945, they sold the property to Mr. Jode Sheehan and wife. Both Mr. and Mrs. Howell signed the deed. The difference between the indebtedness against the property and the purchase price thereof was $8,895.17. The purchasers gave Mr. and Mrs. Howell a check for that amount. Mrs. Howell endorsed that check. Howell deposited it to his credit at the bank, the net deposit, after payment of exchange, being $8,892.67. Mrs. Howell said in her answer

that Howell promised her "that he would build her a home of her choice in Cleveland, Mississippi, when his business permitted it." She testified that she let Mr. Howell have the money to "put it in his automobile business in Cleveland. He was starting the business", with an oral promise that when he made good in his business he would build her another home. Again she said she let him have the money to use in the automobile business at Cleveland and Howell orally promised that if he prospered in business he would build her another home. All of this was oral; there was no written promise of any kind. It will be observed that the oral promises were vague, indefinite, uncertain and conditional. Mrs. Howell invokes the equitable doctrine that when a husband purchases a homestead with the wife's money and wrongfully takes title in his own name in violation of an agreement with his wife that title should be in her name, a resulting trust arises in favor of the wife, citing Shrader v. Shrader, 119 Miss. 526, 81 So. 227; Robinson v. Strauther, 106 Miss. 754, 64 So. 724; Ford v. American Home Fire Ins. Co. (Miss.), 5 So. 2d 416 and other cases. Of course, the rule of law is well established, but the facts of this case do not bring it within the rule. It is not claimed here that Howell used any of this money, or was supposed to use any of it, in the purchase of the home in Cleveland. ■■ ■ At most, he made a conditional, indefinite, vague oral promise. Such a promise is not effective to create a legal, binding obligation. Logan v. Johnson, 72 Miss. 185, 16 So. 231; Bush v. Bush, 134 Miss. 523, 99 So. 151. ■■ ■ As a matter of fact later developments did not fulfill the conditional oral promise. The automobile business did not prosper. It was a failure. No constructive or resulting trust resulted from this arrangement under the facts of this case. There is no need to invoke Section 269, Miss. Code 1942, requiring express trusts to be in writing and recorded in order to be legal and binding, nor to Section 455, said Code, re-

quiring transfers and conveyances of property between husband and wife to be in writing and be recorded in order to be valid against third persons. The chancellor was correct in holding that Howell did not hold title to the Cleveland property in trust for Mrs. Howell.

■■ ■ The chancellor found that the deed made by Howell to Mrs. Howell on December 20, 1954, conveying the house and lot in Cleveland, was made with the intent to defraud the complainant as a creditor of Mr. Howell. The evidence amply justifies the finding. Many suits had been instituted against him; a number of judgments had been obtained; his automobile business had been closed down by action of the Mississippi Employment Security Commission; complainant had endeavored, without success, to have various conferences with him in an effort to collect the debt owing them; a number of times Howell had failed to keep his appointments with complainant; he had conveyed to Mrs. Howell what is called Laben Bayou Plantation, containing 257 acres; and he had also individually and as trustee for his three children conveyed the Wilmot Plantation. In other words, he was disposing of all of his property and refusing to cooperate with complainant in an effort to discharge his debt to it. The record discloses other facts and circumstances justifying the finding of the chancellor. ■■ ■ However, Mrs. Howell says she paid Howell ample consideration for the Cleveland property and, notwithstanding the intent of the parties to the deed, she got a good title to the property conveyed. She does not claim she actually paid Howell any thing when the deed was executed. What she says is that Howell owed her the money she let him have from the sale of the Whitehaven homestead, and she invokes the rule that a husband, though insolvent, has the right to prefer his wife over other creditors provided he owes her a valid debt equal to the fair value of the property convey, citing Graham v. Morgan, 83 Miss. 601, 35 So. 874; Kaufman v. Whitney, 50 Miss. 103 ■■■

There are two answers to this contention: First, as above shown, there was no unconditional promise on the part of Bill Howell to repay this money, he did not owe his wife this money tested by legal requirements. And, Second, the debt, had it existed, was not equal to the value of the property. Mrs. Norman was willing to pay, and apparently did pay, $28,500 for the property. There was a secured debt against it of $11,848.66, leaving a net value of approximately $16,650. We have not tried to evaluate the very uncertain question of interest on the alleged debt of Mr. Howell to Mrs. Howell.

 But Mrs. Howell urges that, even though nothing was paid for the deed, the property constituted the homestead and Howell had the legal right to convey it to her, to the extent of the homestead exemption of $5,000, even though both parties had the intent to defraud Howell's creditors. In this contention we think appellant is correct. The evidence is all to the effect that on December 20, 1954, when the deed was executed by Bill Howell to the appellant, the property constituted the homestead of the parties. They and their three children were residing there. They had so occupied the property for a number of years. Howell did not go to Shreveport until January 1955. His wife and children continued to occupy the home. He came back to Cleveland from Shreveport a number of times. Mrs. Howell testified at the trial that she and the children moved to Shreveport some five or six weeks before the trial. Mr. and Mrs. Howell obtained homestead tax exemption on the Cleveland home for the year 1955. No new home had been acquired by Mr. Howell when this deed was executed. While Mr. and Mrs. Howell had an agreement December 15, 1954, that they would live apart but not obtain a divorce, they seem to have shortly thereafter changed their intentions and continued to live together as man and wife, and were doing that in Shreveport when this cause was tried. Both Mr. and Mrs. Howell signed

the agreement to sell the Cleveland property to Mrs. Norman. We think it is clear that on December 20, 1954, the date Billy Howell made the deed to Mrs. Howell, the Cleveland property constituted their homestead. Billy Howell had the right to convey to his wife the extent and value of that homestead regardless of his intention toward his creditors. Section 329, said Miss. Code, provides: "The exempt property, real or personal, disposed of by the owner, shall not by disposal become liable to the debts of the owner; and any debtor leaving this state may take with him his personal property which is exempt from execution." The value of the homestead exemption was $5,000. Section 317, 1954 Cumulative Supp. to Miss. Code 1942 Annotated. It follows that Mrs. Howell, upon receipt of the deed from Mr. Howell, was vested with the value of the homestead exemption. This result, however, raises another question. The chancellor rendered a personal decree against Mrs. Howell for $2,165, balance of the purchase price of an automobile, for which Mrs. Howell had executed a purchase contract and a promissory note, which papers had been bought by and transferred to the complainant, this amount to be credited with the net proceeds of the sale of the automobile.

The question naturally arises, under our holding, whether Mrs. Howell is entitled to the entire $5,000, free of the personal decree against her, or whether complainant has the right to have the personal decree satisfied out of the $5,000, as a result of subsequent changes, if any, in the homestead status. The chancellor was not confronted with this question on the former trial. We think it best that he pass upon it after full opportunity of all interested parties to be heard. Therefore, we remand the case so that the chancellor may determine whether or not the homestead status subsequently changed after December 20, 1954, in such manner as to render the proceeds of the sale to Mrs. Norman liable to

the satisfaction of the personal decree against Mrs. Howell, or whether Mrs. Howell is entitled to the $5,000 free of such personal decree.

■■ ■■ The chancellor held that the Chrysler Airtempt air conditioner was a part of the realty. The evidence supports the conclusion.

Affirmed in part, reversed in part and remanded.

*Kyle, Arrington, Ethridge* and *Gillespie,* JJ., concur.

## ON SUGGESTIONS OF ERROR

GILLESPIE, J.

In her suggestion of error appellant directs our attention to a statement in our former opinion that "The Howells constructed a house on the lot." Reference was to the Whitehaven property deeded to Mrs. Howell by her mother. The record shows that the house was on the lot when Mrs. Howell's mother deeded it to appellant. The conference decided the case on the theory that the house and lot in Whitehaven was the property of Mrs. Howell, and the incorrect statement did not bear on our decision. The former opinion is modified so as to delete the quoted statement and so as to show that Mrs. Howell was deeded a house and lot in Whitehaven.

Appellant also calls to our attention that the check for the net purchase price of the Whitehaven property was made out to Mrs. Howell and not to her and her husband. The record showed that Mrs. Howell was not sure how the check was made but the banker testified positively that it was made out to Mrs. Howell. At that time the money was Mrs. Howell's, and we deem it immaterial how the check was made out, but the opinion should show that it was made out to Mrs. Howell.

After further conference and consideration of the case, we are of the opinion that the suggestion of error filed by appellant should be overruled.

■ ■ ■ When in our former opinion we dealt with the contention of appellant that her husband owed her for the proceeds of the sale of the Whitehaven homestead, and that he had the right to prefer her over his other creditors, the fundamental inquiry was whether the conveyance from Howell to his wife was a fraudulent one, not entirely whether Howell owed his wife, although that was necessary to sustain appellant's contention. Whether Howell and his wife in reality intended that the transfer of the home from Howell to appellant was to repay appellant, that is, prefer her over his other creditors, was vital, for if there was no honest intention to satisfy a debt by the conveyance and thus prefer appellant, but the intention was to hinder, delay and defraud his creditors, the conveyance was invalid even if Howell did owe appellant. Based on appellant's testimony, the fact that there was no unconditional promise by Howell to repay appellant and the parties did not appear to treat the receipt by Howell of the proceeds of the Whitehaven sale as creating a debt, the fact that the value of the property transferred was largely in excess of the amount of the proceeds of the sale of the Whitehaven property, the financial condition of Bill Howell at the time of the conveyance, and all the other facts and circumstances surrounding the conveyance from Howell to appellant, the chancellor was fully justified in finding that the conveyance from Howell to appellant was not to satisfy any debt, or to prefer appellant as a creditor, but that the real intent and purpose for the conveyance was to hinder, delay, and defraud the grantor's creditors, including appellee; and the effect of the deed was to do that very thing.

■ ■ ■ We recognize the rule that permits a husband to prefer his wife over other creditors, and also the rule that if the conveyance is otherwise valid it is partially good even if the property conveyed exceeds in value the debt, so that the wife is validly preferred pro tanto;

but in every such case the honest intent that the conveyance satisfy a debt so as to prefer the grantee must be found on sufficient evidence. ▮▮ ▮ Where a man owes his wife a debt and also owes others, he may in good faith convey property to her in satisfaction of the debt, even if the result of the conveyance is to hinder, delay, or defeat his other creditors. In other words, where the real intent and purpose is to hinder, delay and defraud other creditors, the conveyance is void, even though the grantor is actually indebted to the grantee. On the other hand, if the real intent and purpose was to satisfy the debt owing to the grantee, it is valid notwithstanding the claims of other creditors would be hindered, delayed or defeated; for if it were otherwise there could never be a valid preference because to prefer one creditor necessarily hinders the others.

Appellee also filed a suggestion of error, and it should be and is overruled.

Suggestions of error overruled and former opinion modified.

*Roberds, P. J.,* and *Kyle, Arrington* and *Ethridge, JJ.,* concur.