440 So.2d 261 (1983)
Phyllis A. PARMES
v.
ILLINOIS CENTRAL GULF RAILROAD.
No. 53851.
Supreme Court of Mississippi.
August 31, 1983.
Rehearing Denied November 16, 1983.
*263 Satterfield & Allred, Michael S. Allred, James D. Holland, Jackson, for appellant.
Wise, Carter, Child & Caraway, Charles T. Ozier, Jackson, for appellee.
Before BROOM, P.J., and ROY NOBLE LEE and BOWLING, JJ.
BROOM, Presiding Justice, for the Court:
Railroad overpass accident in which plaintiff/appellant Phyllis A. Parmes was injured when the 18-wheeler truck carrying her (a passenger) struck the underside of the Gallatin Street overpass which had inadequate clearance height is featured by this case, appealed from the Circuit Court, First Judicial District, Hinds County. Jury verdict there exonerated defendant/appellee, Illinois Central Gulf Railroad (ICGR herein), and judgment was entered against plaintiff Parmes. We affirm.
On appeal, she argues that the lower court erred as to jury instructions, and in several evidentiary rulings. As stated in her brief, she charged ICGR with negligence in the maintenance and construction of the railroad overpass. She also charged ICGR with failing to keep and maintain the railroad at a reasonable height, failing to place there reasonable and adequate signs, warning devices, and lights.
Miss Parmes rode with her truck-driver-friend, Michael Haney,[1] on June 18, 1977, in a large tractor/trailer rig owned by Wilcox Truck Lines, Inc., from Memphis to Jackson. They arrived in Jackson at about 9:00 p.m. and were headed north on Gallatin Street when the truck struck the overpass which had a vertical height clearance of 11'10"; the truck rig was 13'6" high. When approximately 1 1/2 trailer lengths from the overpass, driver Haney realized the rig could not fit under it and applied his brakes, but nevertheless hit the underside of the overpass, flipping the rig over on its side, seriously injuring Miss Parmes. The truck did not, however, leave any skid-marks.
As Parmes and her driver approached the overpass on Gallatin Street, two vertical warning height clearance signs were there. One of the signs was suspended from Gallatin Street's intersection with nearby Rankin Street, and another was attached to the overpass itself. The signs indicated a clearance of 11'2" and apparently the sign at Rankin Street intersection (through which the rig passed) was somewhat faded. Large lights illuminated the area on the night in question. Gallatin Street overpass is owned and maintained by ICGR, which *264 constructed the overpass in 1926 in compliance with the Jackson city ordinances. The warning signs on the approaches to the overpass are maintained by the City of Jackson.
In her suit, Miss Parmes named ICGR, driver Haney, and Wilcox Truck Lines, Inc., owner of the truck, as defendants, but her claim was settled against all the defendants and dismissed except as to ICGR, which was exonerated by a jury verdict at the trial.
Argument is that the trial court, by its jury instruction, erred in excluding evidence of prior and subsequent accidents at the railroad overpass, and in excluding evidence of police accident reports involving prior accidents at the overpass. These contentions were made separately but are closely related and will be discussed together.
Under certain conditions, reports of prior accidents or subsequent accidents at a certain location may be admissible into evidence. Admissibility of such reports can only be passed upon here at the appellate level by examination of the reports themselves or their contents. However, the record does not indicate that plaintiff, Miss Parmes, ever made proffert of the accident reports and we are unable to find that she ever introduced the reports for identification. Analogous is Arrow Food Distributors v. Love, 361 So.2d 324, 328 (Miss. 1978), which states:
Even if the records on Riley at the Mississippi State Hospital at Whitfield were not privileged and were admissible in evidence, Arrow has not preserved this point because these records were never introduced into evidence, nor were they even offered into evidence.
Without the accident reports, we cannot now determine on appeal whether the trial judge committed error  either on the issue of hearsay or substantial similarity of conditions  in excluding the reports. Howell v. General Contract Corp., 229 Miss. 687, 697, 91 So.2d 831, 834 (1957). Thus the court did not err by its jury instruction which excluded the use of evidence of prior and subsequent accidents or in excluding the reports themselves.
She contends that the trial court's granting of instruction D-17 was error. D-17 charges the jury that
... testimony concerning prior accidents at the overpass in question is not evidence that the posted clearance signs were not adequate or that the overpass was unreasonably dangerous, but such testimony may only be considered in determining whether or not the defendant had knowledge of such prior accidents.
Illinois Central Railroad Company v. Williams, 242 Miss. 586, 605-06, 135 So.2d 831, 839 (1961), held that evidence of other similar accidents, or injuries, at or near the same place when admissible is
... for the following purposes only: (1) To show the existence of a defective or dangerous condition or appliance and the dangerous character of the place of injury or of the machine or the appliance, and (2) to show the defendant's notice or knowledge thereof. (emphasis added).
Similarly, S.H. Kress v. Markline, 117 Miss. 37, 47, 77 So. 858, 862 (1917), held:
In the cases that allow testimony of collateral facts or issues to be introduced this testimony is allowed for two purposes: One is to show that the defect or manner of operation has continued for such a length of time that the master has knowledge or is charged with notice of the defect or negligent manner of operation. The other ground of admissibility is to show the dangerous character or nature of the place.
Under the authorities, evidence of prior accidents is not admissible to show negligence per se, and therefore could not be used to show adequacy of the allegedly low clearance in this case. In this connection, it is important to note that Miss Parmes did not introduce proof showing similarity of conditions at the time of her accident as contrasted with other prior accidents under discussion. Under these circumstances, instruction D-17 was not a misstatement of the law but was appropriate when the plaintiff was allowed during the trial to *265 introduce into evidence, without a showing of substantial similarity of conditions, the number and dates of the occurrence of prior accidents at the overpass.
In summary, Illinois Central Railroad Company v. Williams allows evidence of prior accidents to be used to show only two things  the existence of a dangerous condition, and knowledge of such condition. This evidence is admissible for these purposes only upon a showing of substantial similarity of conditions. Moreover, evidence of prior accidents is not admissible to show negligence vel non nor specific acts of negligence. Inasmuch as appellant never made a showing of substantial similarity of conditions, the evidence was not admissible for either purpose. Therefore, the granting of jury instruction D-17 does not warrant reversal.
Further argument is that the court erred in instructing the jury as to the character of the agent to receive notice on behalf of the railroad. This error is purported to have occurred in the granting of jury instruction D-20 which charged the jury,
The Court instructs the jury that the defendant did not have knowledge or notice of prior accidents at the overpass in question, unless you find from a preponderance of the evidence that knowledge of the occurrence of those accidents was known, or in the exercise of ordinary care should have been known, by an officer or agent of defendant who had the power or authority to regulate or deal with such matters, or by an officer or agent of defendant who held such a job or position that it was his duty to communicate such matters to his superiors.
Plaintiff urges that because of this instruction,
This case went to the jury on instructions of the court that the defendant did not have knowledge of the dangerous nature of the overpass, unless they found that there was actual knowledge of accidents known to an employee of the defendant, who had the power or authority to regulate or deal with such matters, or an officer or agent of the defendant who has such a position that it was his duty to communicate such matters to his superiors.
She argues that the giving of instruction D-20 placed a burden on her "to show that a certain class of employee of the railroad had knowledge of the dangerous condition." She continues by asserting that this condition was "constructively known" to the railroad under the dictates of Illinois Central Railroad Company v. Farris, 259 F.2d 445, (5th Cir., 1958). Farris involved an accident in which an 11-foot truck struck an Illinois Central overpass with a vertical clearance of 9'6". At that time, the legal limit for truck heights was 12'6", and there were no vertical clearance markers indicating the height of the overpass. Farris, a federal case, states that the railroad was held to have constructive notice that trucks up to 12'6" would use the roads and would be subjected to the dangers of overhead structures. However, Farris does not discuss the character of an employee necessary to give notice to a railroad of prior accidents at a railroad overpass.
As a matter of agency law, it has long been the rule that "a corporation is bound by the knowledge acquired by, or notice given to, its officers or agents which is within the actual or apparent scope of their authority or employment and which is in reference to a matter to which their authority extends." 19 Am.Jur.2d "Corporations" § 1263, at 669 (1967).
Plaintiff's contention in her brief to the contrary notwithstanding, the case did not go to the jury on instructions of the court that the railroad did not have knowledge of the dangerous condition of the overpass unless a certain class of employee had actual knowledge of a prior accident. Instead, jury instruction D-20 instructed the jury as to when the railroad is said to have knowledge of prior accidents of the overpass. Thus, her second assignment of error confuses dangerous conditions with prior accidents. And, although the occurrence of prior accidents, if properly qualified and placed before the jury, may be evidence of *266 the dangerous condition of the overpass,[2] it is not in and of itself synonymous with or per se proof of dangerous conditions. Though the railroad may, under Farris and Mississippi Code Annotated § 63-5-17 (1972), have had constructive notice of the dangerous condition of the overpass, jury instruction D-20 addressed only the issue of prior accidents and, though inartfully drawn, is not entirely egregious. The dictates of Farris and Mississippi Code Annotated § 63-5-17 were presented to the jury in jury instruction P-11, and, to a lesser extent, jury instruction P-9.
We in no wise approve instruction D-20, but on this record, when considered along with the proof and all other instructions, the granting of it does not require reversal.[3] Whether ICGR had constructive notice of the dangerous condition of the overpass is not dispositive, vis-a-vis instruction D-20, because D-20 went to the issue of notice of prior accidents at the overpass rather than to the dangerous condition of the overpass itself.
Another argument of the plaintiff is that the lower court erred in excluding testimony as to knowledge in the community of the dangerous nature of the overpass, while at the same time allowing testimony on the part of ICGR as to its lack of knowledge of prior accidents. She attempted to introduce testimony as to knowledge in the community of the dangerous nature of the overpass on three occasions. Questions were propounded to two police officers and another person about their knowledge and the knowledge of the public "concerning whether or not this bridge down there has frequently had accidents occurring?" The trial court sustained objections to the testimony under consideration.
The questions propounded by plaintiff's counsel were addressed to community knowledge of prior accidents, but the plaintiff argues "The lower court excluded testimony as to the knowledge in the community of the accidents, and in turn, the dangerousness of the Railroad's overpass." Rebuttal brief of the plaintiff states, "It is sufficient to find the railroad had reason to know of the dangerous condition of the overpass in order to find liability." In this connection, we point out that the mere fact that the overpass was of a dangerous nature does not per se impose liability: It only requires the railroad to take reasonable precaution. Illinois Central Railroad v. Williams, 242 Miss. at 599, 135 So.2d 831. It is the failure to take precautions that imposes liability. Id., Illinois Central Railroad Co. v. Farris, at 449, 448, footnote 3. Thus, whether ICGR had knowledge of the dangerous condition of the overpass may go to the issue of its duty to maintain adequate precautions. In this regard, at the request of the plaintiff, the lower court granted instruction P-11,[4] which effectively informed the jury as to the knowledge of ICGR of the dangerous condition of the overpass and its duty to post reasonable and adequate warning signs.
*267 As noted above, the plaintiff sought introduction of the testimony under consideration to establish "the dangerousness" of the overpass, which in effect was opinion-type testimony. To this extent, such opinion testimony was an attempted invasion of the jury's province. Such evidence is error under Illinois Central Railroad Company v. Williams. Russell v. Mississippi Central Railroad, 239 Miss. 741, 750, 125 So.2d 283, 286 (1960); Columbus and G.R. Co. v. Coleman, 172 Miss. 514, 160 So. 277 (1935). Thus we find that the lower court correctly refused to allow the plaintiff to establish dangerousness of the overpass by testimony which amounted to opinion testimony as an invasion of the province of the jury, regardless of whether such testimony was of a police officer or of any other individual.
Concerning this argument, plaintiff contends that it was error to not only exclude the testimony as to knowledge in the community of the dangerousness of the overpass but that such error was compounded by allowing testimony on the part of the railroad as to its lack of knowledge of prior accidents. There can be no reversible error in the court's allowing such testimony to be introduced because plaintiff's counsel failed to object. Without such an objection having been made, we will not here put the lower court in error.
Fifth, and final, argument of the plaintiff is that the trial court erred in refusing to let the witness Hutchinson testify as an expert and in turn allowing defense witness May to give opinion evidence.
Harold Hutchinson, Jr., is a selfemployed, licensed civil engineer and surveyor, who testified for plaintiff. Hutchinson had been in the field approximately 13 years, and held a BS degree from Mississippi State University since 1957. He testified that he has had experience in designing and supervising construction of commercial and industrial subdivisions, including roadway designs and construction. Nowhere did he testify that he had expertise as to the issue of "lighting" or the "design of lighting". Whether a witness (such as Hutchinson here) possessed the required degree of specialized knowledge within the particular field to testify as an expert generally rests within the judge's sound judicial discretion. Examination of the circumstances surrounding the trial judge's ruling in this case shows that no error was committed.
First instance in which plaintiff attempted to elicit expert testimony from Hutchinson concerned the witness's opinion as to the design of the Porter Street light. The trial judge sustained an objection on the basis that the witness was not qualified as to the design of lights. Other than Hutchinson's general qualifications as an engineer, no testimony was given that he was familiar with or had experience with the design of lights. Consequently, it cannot be said that Hutchinson possessed the special knowledge of the subject matter necessary to aid jurors in solving problems that they cannot because of their own inadequate knowledge. Furthermore, no real proffert was made as to what Hutchinson would have said had he been allowed to testify as to the design of the Porter Street light. Consequently, we will not reverse the trial judge for his exclusion of Hutchinson's testimony. Legget v. Graham, 218 So.2d 892 (Miss. 1969); Howell v. General Contract Corporation, supra.
Plaintiff also attempted to elicit from Hutchinson expert testimony as to whether the warnings on the bridge were adequate and in keeping with engineering design criteria with which he is familiar and which is generally accepted. The Court ruled that if "he is familiar with the rules and regulations which are accepted as standard in that industry, he might be able to give an opinion but not to give a shotgun opinion." Had plaintiff put on testimony that Hutchinson was indeed familiar with the generally accepted standards as related to overpasses and underpasses, the witness would have been competent to testify as to those standards. However, outside a reference to a manual, plaintiff did not put on such testimony. Hutchinson did state that he had experience with street design and orientations to other streets and terrains, *268 but that he had no experience as to designing traffic control devices. In placing traffic control devices he relied upon a manual of uniform traffic control devices. He never testified though that he was familiar with or knew of accepted engineering practices that constituted the standard in the engineering profession as they relate to bridges or overpasses. Whether witness Hutchinson should have been allowed to testify as an expert was within the judge's sound discretion. Upon the record, we cannot say that the trial judge abused his discretion in refusing to allow Hutchinson to testify as an expert on this matter  particularly in light of the fact that plaintiff was allowed to introduce photographs of the overpass and surveys of the area from which the jury could decide for themselves whether adequate precautions were taken.
Exception is taken by plaintiff to the introduction by ICGR of testimony by Otho May, senior engineering aid for Mississippi Power & Light Co. On only one occasion did appellant object to the qualifications of May. On that occasion, the question was rephrased, and May was allowed to testify as to his personal knowledge and not in the capacity of an expert. No objection was made to the rephrasing of this question. Once again, without having objected to the testimony at trial, appellant cannot now argue that it was error to introduce that testimony. Legget v. Graham, supra; Howell v. General Contract Corp., supra.
Plaintiff's rebuttal brief takes issue with purported opinion testimony by the witness Nord as to stopping distance, reaction times and the adequacy of the warnings at the overpass. In Ludlow v. Arkwright-Boston Manufacturers Mutual Insurance Co., 317 So.2d 47, 49 (Miss. 1975), it was said,
Significant here is the fact that witness Young first testified as an adverse witness called by appellant. Appellant put to him questions involving engineering opinions and is in no position now to complain that appellee was later allowed to question Young concerning the same subject.
The witness Nord, a civil engineer with ICGR, was first put on the stand as an adverse witness by plaintiff's counsel who continuously asked him questions concerning the safety of the Gallatin Street overpass, particularly the adequacy of the signs and an oncoming driver's perception of the bridge. Consequently, plaintiff lacks posture to now complain that the appellee was later allowed to question Nord concerning the same subject.
Careful review of the briefs and the record before us reveals no reversible error. Although the trial below was not a perfect trial, it was at least a fair trial and all the issues were properly submitted to a jury which found against the plaintiff. Although Miss Parmes was seriously injured in the collision in question, we cannot say that the jury was not justified in finding for ICGR. Affirmance is therefore required.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.
NOTES
[1] She was paid $58,750 in settlement of her claim against Haney, the driver, and Wilcox, his employer.
[2] In its brief, ICGR admits that under Farris and the statute setting the maximum height of trucks, Miss. Code Ann. § 63-5-17 (1972), it had notice that large trucks and trailers constructed to the maximum legal height would be using the roads and be subjected to the dangers of a lower overpass.
[3] At plaintiff's request, and over ICGR's objection, the jury was instructed that at its discretion punitive damages could be awarded her. She also was granted several instructions liberally phrased in her favor.
[4] Jury Instruction P-11:

The overpass of defendant Railroad over South Gallatin Street at the site of the accident in question was at a height above the street of less than the lawful height of vehicles which are authorized to travel the streets of Mississippi. Therefore, it was the duty of the defendant Railroad to give the travelling public reasonable and adequate warnings by posted signs of reasonable size and at reasonable intervals of the low overhead clearance.
Therefore, if you find from the greater weight of the evidence that the defendant Railroad failed to reasonably and adequately warn of the low clearance by posted signs of adequate size and at adequate distances from the overpass, the said defendant Railroad was negligent. If you so find and further find that such negligence proximately contributed to the occurrence of the accident in question and plaintiff's injuries, your verdict must be for plaintiff.