**Joe T. DEHMER, JR., Plaintiff,**

v.

**Murry Owen TEMPLE, Debtor, Joyce S. Temple and Frank Youngblood, In His Capacity As Trustee, Defendants.**

Civ. A. No. J84–0062(B).
Bankruptcy No. 84201456JC.
Adv. No. 820815JC.

United States District Court,
S.D. Mississippi,
Jackson Division.

Nov. 30, 1984.

Craig M. Geno, Jackson, Miss., for plaintiff.

Thomas W. Sanford, Robert G. Nichols, Jr., Jackson, Miss., for defendants.

## ORDER AND MEMORANDUM OPINION

BARBOUR, District Judge.

### I. JURISDICTION

This matter is before the Court on an appeal by Joyce S. Temple from a judgment of the bankruptcy judge setting aside a conveyance of real property from the debtor, Murry Owen Temple, to Joyce S. Temple as fraudulent. Jurisdiction in the bankruptcy court exists pursuant to 11 U.S.C. § 544 and Local Rule 21. This Court has appellate jurisdiction of this matter.

### II. PROCEDURAL HISTORY

On July 26, 1982, Murry Owen Temple filed a Chapter 7 voluntary petition for bankruptcy (Bankruptcy No. 84201456JC). On October 12, 1982, Joe T. Dehmer Distributors, Inc. (Dehmer), a creditor of Temple, filed a complaint to set aside alleged fraudulent transfers of real property from Murry Owen Temple to his estranged wife, Joyce S. Temple, in March and April of 1981 (Adversary Proceeding No. 820815JC). Issue was joined and after a hearing, the bankruptcy judge entered a Judgment on

August 25, 1983, setting aside one of the transfers as fraudulent. By stipulation at the hearing, Joe T. Dehmer, Jr. was substituted as the party in interest for Joe T. Dehmer Distributors, Inc. After a minor issue was modified by a Corrected Judgment entered on October 4, 1983, Joyce S. Temple perfected her appeal to this Court.

## III. FACTS

The Debtor, Murry Owen Temple, was a Union Oil service station dealer in the City of Jackson, Mississippi. In the latter part of 1980, Mr. Temple's account with Dehmer became in arrears and by the early part of 1981, the arrearage was established at approximately $80,000.00.

Around 1965 or 1966, the Temples purchased two adjoining tracts of land in Madison County, comprising approximately 36 acres each. In 1971, they purchased an additional 69 acres adjoining the other property. The record indicates that Mr. and Mrs. Temple both contributed funds to the purchase of all of this property, with Mr. Temple contributing the larger share. The two tracts of approximately 36 acres each were deeded to Mr. and Mrs. Temple. The third tract, of approximately 69 acres, was deeded to Mr. Temple alone. Mr. and Mrs. Temple resided on the three tracts, all of which were contiguous. Over the years, the Temples filed for homestead exemption on all three parcels. Since 1970, the record indicates that Mrs. Temple paid the taxes on all of the parcels out of her own funds. According to the testimony, one of the smaller tracts acquired by Mr. and Mrs. Temple in 1965 or 1966 from his mother, was obtained in exchange for a promise by Mr. Temple to provide a home for his mother.

In October of 1980, Mr. and Mrs. Temple separated and Mr. Temple left the property in Madison County to reside in Jackson. The record does not indicate whether Mrs. Temple consented to this separation or if Mr. Temple intended at some point to return to the property to live. On March 3, 1981, Mr. Temple quitclaimed all of his right in the three tracts of property to his wife, Joyce S. Temple. An error in the description of the property was corrected by Correction Quitclaim Deed dated April 7, 1981.

After the conveyances, the record indicates that Mr. Temple owned no further real property, and that his only personal property was substantially less in value than the claims of his creditors. According to the Temples, the only consideration for the quitclaim deeds to Mrs. Temple was that she provide a home and care for Mr. Temple's mother. This agreement was never reduced to writing. The record does not indicate what amounts, if any, Mrs. Temple contributed to the support of Mr. Temple's mother. The record did indicate that Mr. Temple's mother received Social Security and Medicare benefits. The record does not authoritatively indicate the current value, in total or in part, of any of the three tracts of land conveyed to Mrs. Temple.

The bankruptcy judge entered an opinion on January 20, 1984, concluding that Dehmer relied upon Murry Owen Temple's ownership of the three tracts of property in extending him credit, and that the transfer of the 69 acre tract was without fair consideration and was fraudulently undertaken to avoid subjecting it to the claims of Murry Temple's creditors. The opinion did not expressly discuss the contention of Mrs. Temple that the property constituted homestead property.

The issues on this appeal are:

1. Whether the conveyances constituted fraudulent conveyances, and

2. Whether the property constitutes homestead property of Joyce S. Temple, and if so, how this fact affects the authority of the bankruptcy judge to authorize the trustee to sell the land for the benefit of the debtor's creditors.

## IV. STANDARD OF REVIEW

Bankruptcy Rule 8013 provides that "[f]indings of fact [by the bankruptcy

judge] shall not be set aside unless clearly erroneous ...." In response to *Northern Pipeline Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), this District enacted Local Rule 21 which provided, *inter alia*, that the district judge, in reviewing an order of the bankruptcy judge, need give no deference to the findings of the bankruptcy judge. Subsequent to enactment of Section 104 of the Bankruptcy Amendments and Federal Judgeship Act of 1984, orders have been entered in this district effectively modifying the scope of review in Local Rule 21 to that contained in the Bankruptcy Amendments. After reviewing the record of the proceeding before the bankruptcy court, the Order and Opinion of the bankruptcy judge and the briefs of the parties, this Court is in agreement with the findings of fact made by the bankruptcy judge. However, this Court concludes that additional facts must be developed which requires the remand of this case to the bankruptcy court for reasons to be set out hereinafter.

## V. DISCUSSION

### A. FRAUDULENT CONVEYANCES

■ Dehmer contends that this action was brought pursuant to 11 U.S.C. § 544, rather than 11 U.S.C. § 548 which requires that the "fraudulent" conveyance be made within one year of the date of filing bankruptcy. Obviously, since the transfers complained of occurred in March and April of 1981, and the petition for bankruptcy did not occur until July of 1982, Section 548 would be inapplicable. Dehmer therefore travels under § 544 which provides as follows:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by ...

(b) The trustee may avoid any transfer of an interest of the debtor in property

or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under Section 502 of this Title or that is not allowable only under Section 502(e) of this title.

Creditors may utilize Section 544 in connection with state fraudulent conveyance statutes to set aside fraudulent conveyances. *See, e.g., In re: Vidana*, 19 B.R. 787 (Bankr.Ct.Fla.1982); *In Re: Hause*, 13 B.R. 75 (Bankr.Ct.Mass.1981); *Matter of Dante*, 1 B.R. 547 (Bankr.Ct.Ga.1979).

■ Dehmer has relied upon *Miss. Code Ann.* § 15–3–3 (Supp.1983) in conjunction with 11 U.S.C. § 544. Section 15–3–3 provides in pertinent part:

Every gift, grant, or conveyance or lands, tenements, or hereditaments, goods or chattels ..., by writing or otherwise, ... had or made and contrived of malice, fraud, covin, collusion, or guile, to the intent or purpose to delay, hinder or defraud creditors of their just and lawful actions, suits, debts, accounts, damages, penalties, or forfeitures, ... shall be deemed and taken only as against the person or persons, his, her, or their heirs, successors, executors, administrators, or assigns, and every of them whose debts, suits, demands, estates, or interests by such guileful and covinous devices and practices shall or might be in any wise disturbed, hindered, delayed, or defrauded, to be clearly and utterly void; any pretense, color, feigned consideration, expressing of use, or any other matter or things to the contrary notwithstanding.

Although insolvency is not a condition precedent to the application of § 15–3–3, the evidence in the record clearly supports the bankruptcy judge's finding that Murry Owen Temple was "insolvent" as that term is defined in § 101(26) of the Bankruptcy Code. The record is clear that Mr. Temple was approximately $80,000.00 in arrears in his payments to Joe T. Dehmer and was not making the monthly payment to reduce

this indebtedness agreed to by the parties. Furthermore, Mr. Temple owed the First National Bank of Jackson, the Farm Bureau, and had a levy placed on him for delinquent taxes by the Mississippi State Tax Commission. The record is clear that subsequent to the conveyance of the real property involved herein to his wife, Mr. Temple had insufficient assets to pay his creditors, and subsequently filed Chapter 7 Bankruptcy. In this situation, Mississippi law provides that conveyances to avoid payment to creditors may be set aside. *Patterson v. Adams*, 245 So.2d 194 (Miss. 1971); *Holman v. Hudson*, 188 Miss. 87, 193 So. 628 (1940).

The Temples admitted that the only consideration for the transfer of the three tracts of land was the promise by Mrs. Temple to care for Mr. Temple's mother. Mrs. Temple argues, however, that one of sound mind may execute a deed from any motive, whether that be love, gratitude, partiality, prejudice, whim, or caprice, *Burnett v. Smith*, 93 Miss. 566, 47 So. 117 (1908), and that the promise by Mrs. Temple was sufficient consideration. She quotes several cases for the proposition that conveyances based upon nominal consideration are valid, including *Fairley v. Fairley*, 34 Miss. 18 (1857) which holds that a deed for love and affection and $1.00 is upon valuable consideration and passes real and personal property without delivery of possession.

■■■ Obviously, where no other factors come into play, a nominal consideration will be sufficient to convey title. Where, however, as in the case at bar, the conveyance is between relatives and is made at a point in time when the grantor is unable to pay his bills to his creditors, the conveyance is highly suspect and subject to being cancelled. In *De Bardeleben Coal Corp. v. Parker*, 164 Miss. 728, 144 So. 474 (1932), the Mississippi Supreme Court held that a moral obligation will not support a conveyance as against the grantor's creditors. Furthermore, Mrs. Temple already had the obligation to care for Mr. Temple's mother because one of the smaller tracts conveyed from the mother to Mr. and Mrs. Temple was based upon the consideration of Mr. Temple providing for the mother's needs for her lifetime. If Mrs. Temple did not assume this obligation, that transaction could conceivably fail for a lack of consideration. Finally, there is nothing in the record to indicate that Mrs. Temple has paid anything in support of Mr. Temple's mother. This Court agrees with the holding of the bankruptcy judge, based upon the record as a whole, that there was insufficient consideration for the conveyance from Mr. Temple to his wife.

In situations such as the one at bar, there is a presumption of fraud which must be overcome by the grantee of the conveyed property. In *Odom v. Luehr*, 226 Miss. 661, 85 So.2d 218 (1956), the Mississippi Supreme Court stated:

> The applicable law is well settled in this state, and a succinct statement of it is that, if a debtor, and especially if he be largely indebted, convey a substantial portion of his property for a nominal consideration or by way of gift, this is presumptively fraudulent as to existing creditors, and the burden will rest upon the defendant to rebut the presumption by showing that the debtor retained property easily accessible to execution and amply sufficient in the ordinary course of events to satisfy his then existing legal liabilities.

*Id.* at 219, *quoting Robinson v. McShane*, 163 Miss. 626, 140 So. 725 (1932). It is overwhelmingly clear from the record that the conveyance of the 69 acre tract to his estranged wife was done by Mr. Temple to avoid execution and attachment by his creditors, including Joe T. Dehmer. For reasons to be set out hereinafter, the bankruptcy judge, on remand, must conduct an additional hearing to determine if Mr. Temple's conveyance of his one-half interest in the two smaller tracts was also fraudulently done to avoid creditors.

## B. HOMESTEAD ISSUES

The bankruptcy judge set aside the conveyance of approximately 69 acres of property which had been held in Mr. Temple's name alone, and allowed the two smaller tracts, which had been held jointly, to remain with Mrs. Temple. Mrs. Temple argues that the bankruptcy judge was in error in dividing up the homestead, and urges this Court to hold that she is entitled to retain all of the property conveyed to her since it constitutes homestead property. The Court concludes that the bankruptcy judge was in error, but for reasons different than those asserted by Mrs. Temple.

The opinion by the bankruptcy judge does not discuss the homestead issue. Mississippi's homestead law is set out in several sections of the code. *Miss. Code Ann.* § 89-1-29 (Supp.1983) provides in pertinent part:

A conveyance, ... upon a homestead exempted from execution shall not be valid or binding unless signed by the spouse of the owner if the owner be married and living with the spouse....

*Miss. Code Ann.* §§ 85-3-21 through 51 (Supp.1983) deal with the exemption of homestead property from execution or attachment by creditors. Section 85-3-21 provides in pertinent part as follows:

Every citizen of this state, male or female, being a householder shall be entitled to hold exempt from seizure or sale, under execution or attachment, the land and buildings owned and occupied as a residence by him, or her, but the quantity of land shall not exceed one hundred sixty (160) acres, nor the value thereof ... the sum of thirty thousand dollars ($30,000.00) ....

Dehmer argues on appeal that the 69 acres in question did not constitute homestead property for two reasons: first, the fact that the property was held in Mr. Temple's name alone indicated an intention by the parties that the property not be considered homestead property; and second, that Mr. Temple's leaving the property when he separated from his wife in October of 1980 constituted an abandonment of the property for homestead purposes.

■ With regard to the first proposition, that the parties intended for the 69 acre tract to be non-homestead, this is rebutted by the testimony of the Temples in the record that they intended for all of the property to be homestead property and by the fact that all of the property was listed in the applications for homestead exemption.

■ The second proposition requires a more detailed examination. The Court must consider what affect the abandonment by Mr. Temple had on the homestead rights of the parties. In *Lewis v. Ladner*, 177 Miss. 473, 172 So. 312 (1937), *overruling suggestion of error* in 177 Miss. 473, 168 So. 281 (1936), the court held that when a husband left a tract of land originally purchased by him in his name alone, which was non-contiguous to the remaining homestead property, that this constituted an abandonment of his, and his wife's, homestead rights in that property. This ruling was predicated, at least in part, on the consent of Ladner's wife to his abandonment of the homestead property. Since the wife in *Ladner* appeared to consent to the abandonment of the homestead property, the court held that her homestead rights, as well as the husband's, had been abandoned. The cases interpreting § 89-1-29, however, make it clear that where the wife does not consent to the abandonment of the homestead property, she retains her homestead rights to that property even when the husband leaves or she is forced to leave. *See, e.g., Hendry v. Hendry*, 300 So.2d 147 (Miss.1974); *Robbins v. Berry*, 213 Miss. 744, 57 So.2d 576 (1952); *Philan v. Turner*, 195 Miss. 172, 13 So.2d 819 (1943).

■ The instant record does not indicate whether Mrs. Temple agreed to the abandonment of the homestead property by

Mr. Temple. On remand, the bankruptcy judge must conduct a hearing to determine this issue. If there was consent, then Mrs. Temple has no homestead rights in the 69 acres or in her husband's ½ interest in the two smaller tracts. If this property were conveyed to Mrs. Temple in violation of § 15-3-3, then she would not acquire any separate homestead right on her own to this property. Therefore, if there was consent to the abandonment, then the 69 acre tract and the ½ interest in the two smaller tracts which she obtained from her husband would be subject to being set aside and sold for the benefit of the creditors. In this event, the following discussion with regard to the $30,000.00 exemption would be inapplicable, because the property sold for the benefit of creditors would not constitute the homestead property of Mrs. Temple.

■ If the bankruptcy judge finds that Mrs. Temple did not consent to the abandonment of the homestead property, then she has a homestead right in the entirety of the property subject to this dispute. Since she owned a ½ interest in the two smaller tracts prior to the conveyances under attack, this interest is not subject to sale for the benefit of the bankrupt's creditors. With regard to the interest conveyed to her by her husband, however, the following discussion is applicable.

Section 85-3-21 exempts homestead property, up to the value of $30,000.00, from attachment or execution by creditors. Mrs. Temple argues that since the property conveyed was less than 160 acres, the entire conveyance should be upheld as to her. This argument ignores the express wording of the statute which provides that only $30,000.00 in value is exempted from execution by creditors. If Mrs. Temple were a surviving widow, then she would be entitled under *Miss. Code Ann.* § 91-1-23 (Supp.1983) to retain up to 160 acres, regardless of the value of the property involved. *Stockett v. Stockett,* 337 So.2d 1237 (Miss.1976); *Hendry v. Hendry,* 300 So.2d 147 (Miss.1974). In *Hendry,* the court held:

> The rule in this state is that the value of land claimed as homestead is neither to be considered nor is it material in determining the rights of a surviving widow in regard to a homestead claim. (citations omitted). *Homestead value is relevant only in considering the claims of creditors in relation to the homestead upon which exemption is claimed.*

*Id.* at 148 .(emphasis added), *citing inter alia* to § 85-3-21.

In *Howell v. General Contract Corporation,* 229 Miss. 687, 91 So.2d 831 (1957), *modified on other grounds,* 229 Miss. 687, 93 So.2d 175 (1957) the court, in applying the predecessor of § 85-3-21, held that a transfer of homestead property to a wife with an intent to avoid claims of creditors would be set aside, with the wife retaining the $5,000.00 in value exemption under the old statute. In *Odom v. Luehr,* 226 Miss. 661, 85 So.2d 218 (1956) the Mississippi Supreme Court again applied the predecessor of § 85-3-21 to allow the grantee/wife only the $5,000.00 homestead exemption from the sale of 140 homestead acres.

On remand, therefore, the bankruptcy judge must determine the value of the property he finds to have been fraudulently conveyed to the wife. (This may be the 69 acre tract alone or that tract and the husband's ½ interest in the two smaller tracts). The bankruptcy judge must then allow Mrs. Temple her $30,000.00 exemption as provided by Mississippi law in §§ 85-3-21, *et seq.*

Since Mrs. Temple (and Mr. Temple) claimed all of the subject property as homestead, then Mrs. Temple's ½ interest in the two smaller tracts which she owns in her own right is also homestead property. If the value of her ½ interest in the two smaller tracts equals or exceeds $30,000 then she is entitled to no additional exemption for the property conveyed to her by Mr. Temple. If the value of her ½ interest in the two smaller tracts is less than $30,-

000 then she may claim the difference as an exemption for the property conveyed to her by Mr. Temple.

By way of illustration, (assuming that the bankruptcy judge has found that all of the property conveyed to Mrs. Temple was fraudulently conveyed and that she did not consent to the abandonment):

A.  If the value of Mrs. Temple's ½ interest in the two smaller tracts is $30,000 (or more) then she has no further exemption and the proceeds from the entire remaining property go to the creditors.

B.  If the value of Mrs. Temple's ½ interest in the two smaller tracts is $10,000 then she is entitled to exempt $20,000 from the sale of the remaining property; the remaining proceeds from the sale to go to the creditors.

After giving Mrs. Temple her $30,000.00 exemption, the balance of the property held to have been fraudulently conveyed is subject to sale for the benefit of the bankrupt's creditors.

In summary, the bankruptcy judge should apply the following analysis:

1.  Were the conveyances of Mr. Temple's one-half interests in the two smaller tracts fraudulent?

a.  If not, they are no longer under consideration.

b.  If so, they are to be considered along with the 69 acre tract as follows.

2.  Did Mrs. Temple consent to Mr. Temple's abandonment of the homestead?

a.  If so, she cannot claim any protection as to the interests conveyed to her by him.

b.  If not, she can include all three tracts in her homestead.

Under any event, Mrs. Temple cannot claim homestead protection for property except to the $30,000.00 limit.

It is therefore ordered that this matter be remanded to the bankruptcy judge for disposition in accordance herewith.