## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-CA-01173-SCT

*WILLIAM C. BARRETT*

*v.*

*HAROLD PARKER d/b/a PARKER FARMS*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/05/1998 |
| TRIAL JUDGE: | HON. MICHAEL R. EUBANKS |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM E. ANDREWS, III |
| ATTORNEY FOR APPELLEE: | RICHARD F. YARBOROUGH, JR. |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 02/24/2000 |
| MOTION FOR REHEARING FILED: | 3/8/2000; denied 5/4/2000 |
| MANDATE ISSUED: | 5/11/2000 |

## EN BANC.

## PRATHER, CHIEF JUSTICE, FOR THE COURT:

### I. INTRODUCTION

¶1. William C. Barrett filed a negligence lawsuit against Harold Parker for personal injuries allegedly suffered after Barrett had a motor vehicle accident when he struck one of Parker's cows on a county road in Lamar County. After a trial on the merits, the jury returned a defense verdict and judgment was entered accordingly. Barrett's motion for a judgment notwithstanding the verdict, or, in the alternative, for a new trial was denied, and he now appeals to this Court.

### II. FACTS

¶2. On June 24, 1996, sometime between 8:00 p.m. and 8:30 p.m., William C. Barrett (Barrett) was driving his automobile when he struck a cow owned by Harold Parker (Parker). Parker, along with his wife, Dawn, own a ranching operation in Lamar County known as H.P. Cattle Company. This incident occurred on the Purvis to Oloh Road, a county-maintained road located in Lamar County, Mississippi. It is undisputed that the 350-400 pound yearling calf belonged to Parker, and it was lying in the roadway as a result of previously being hit by another automobile. His ranching operation has road frontage on the Purvis-Oloh Road for approximately one mile and on the Knight Road for approximately one quarter to one half mile, and the part of Parker's ranch adjacent to the accident site is known as Attix Field. As a result of this accident, Barrett claimed to have incurred medical expenses totaling $39,967.70.

¶3. At trial, Barrett sought to introduce evidence both of previous incidents where Parker's cattle were

allegedly roaming on roads near his ranch as well as other accidents allegedly involving this cattle. Prior to trial, the circuit court ruled that Barrett could introduce evidence of these alleged incidents only if they occurred one (1) year or less prior to June 24, 1996, the date of his accident. Just prior to the first witness taking the stand, outside of the jury's presence, Barrett's attorney made a proffer as to testimony that he claims would have been offered had it not fallen outside of the scope of the Court's Order in Limine. In his proffer, Barrett's attorney told the court that he "[thought] the proof would show" and that "Mr. Parker would admit" that, more than one (1) year prior to the accident at issue, Joyce Norris and an unnamed deputy sheriff were each involved in separate collisions with Parker's cows at or near his farm. Additionally, Barrett's attorney said he might have inquired about an wreck involving David Dubose and one of Parker's cows, but because he was not sure when exactly this incident allegedly occurred, he would not ask about it at trial.

¶4. It is unknown to all how Parker's calf escaped his ranch and found its way onto the road. Immediately following the accident, Gene Hauck, Harold Parker's employee and step-son, arrived at the scene. He inspected the fence at and around the accident site for any place the calf could have gotten out, and at trial, testified that he "didn't see any hole in the fence" and that "the fence was in prime condition." William Barrett stated at trial that he did not observe the condition of the fence the night of the accident.

¶5. On the morning after the accident, both Keith Powell, another of Harold Parker's employees, and Dawn Parker, Harold Parker's wife, inspected the fence at and around the accident scene. Powell testified that there were no areas in the fence with any wire or posts down or broken, and that he "checked the fence and didn't find no [sic] hole in it." Mrs. Parker testified that there were no posts or wires down, and that there was "no problem with the fence at all." Approximately two days after the accident, Dawn Parker video taped the fence at and around the accident scene. This tape, which purportedly showed the fence to be in good condition, was shown to the jury at trial. At trial, Barrett introduced into evidence Exhibit 4, which is a picture of a fence located on the Purvis-Oloh Road within 50 feet of the accident site. This picture was taken approximately two weeks after the accident by Celia Barrett, William Barrett's wife. It showed two fence posts each holding four strands of barbed wire, with purportedly a deteriorated fence post, not holding any wire, lying on the ground between the two posts. Barrett testified that he measured the distance between the two standing posts as 27 feet. However, he stated that he was alone when he took those measurements, and he introduced no photographs of the tape measure in use. He also stated that the four strands of barbed wire attached to the two posts were not lying on the ground. On cross-examination, the following exchange took place between Parker and Barrett's attorney:

Q: [w]ould you agree with me that it would be best for your fence post not to be more than twelve or fourteen feet apart?

A: I would not disagree with that.

Q: Would you agree with me that it would be unsafe to have the fence post twenty-five feet apart?

A: I would say that that's stretching things a little, yes.

Q: In fact, that would probably cause sagging in the barbed wire and make it easier for a yearling to push out?

A: If the fence is not stretched really well, that's probably right.

Gene Hauck, Keith Powell and Dawn Parker all testified that when they inspected the fence, either the night of or the morning after the accident, there was no post lying on the ground, as depicted in Exhibit 4. Barrett, however, testified that the condition of the fence as shown in Exhibit 4 was an accurate depiction of the condition of the fence as he observed it on his way to the chiropractor the morning after the accident.

¶6. Several witnesses for Barrett testified that they saw cattle either on the Purvis-Oloh or Knight Roads in the twelve (12) months preceding Barrett's accident. However, none of these witnesses could affirmatively state that the cattle belonged to Parker. Several witnesses for Parker testified that they were not aware of any instances of his cattle either escaping from the Attix Field or roaming on the Purvis-Oloh Road near the accident site during the twelve (12) months preceding Barrett's accident. Additionally, Keith Powell and Dawn Parker both testified that during this time period, Parker Farms had received calls about Parker's cattle being out on the Knight Road, only to discover that the cows in question belonged to other ranchers who owned cattle nearby.

¶7. After all of the evidence was presented, the jury returned a defense verdict for Parker, and judgment was entered accordingly. Barrett's subsequent motion for a Judgment Notwithstanding the Verdict, or, in the alternative, for a New Trial were denied, and he now appeals to this Court, raising the following assignments of error:

**I. The verdict of the jury is against the overwhelming weight of the evidence and contrary to the law.**

**II. The verdict of the jury is contrary to the physical facts and the evidence presented in the case.**

**III. In considering all of the evidence presented in this action in the light and with all reasonable inferences favorable to Parker, the evidence and the inferences are still so strongly and overwhelming in favor of William C. Barrett that reasonable men, unaffected by bias, passion and prejudice could only arrive at a verdict in favor of the plaintiff, William C. Barrett.**

**IV. The plaintiff offered jury instruction P-13. The court modified the instruction and gave the modified instruction as jury instruction No. 9-A. The refusal of the court to grant plaintiff's instruction, as offered to the effect that the jury could consider stock loose in deciding the negligence of defendant, was erroneous.**

**V. The court erred in granting jury instruction 6 and jury instruction 9 (originally D-5 and D-6, respectively). The granting of both of these instructions over-emphasized and duplicated the language relative to the owner's liability.**

**VI. The restriction by the court on defendant's motion in limine limiting plaintiff's proof to instances of cows in the road to a period of one year prior to the accident, was erroneous.**

**VII. The court refusal to allow plaintiff to show previous accidents involving defendant's cows at times exceeding one year prior to the accident, was erroneous.**

### III. LEGAL ANALYSIS

¶8. Miss. Code Ann. § 69-13-111 (1991) applies to accidents involving livestock on federal or state highways. "The owners of livestock which through their owner's negligence are found on *federal or state* designated paved highways or highway rights-of-way shall be subject to any damages as a result of wrecks, loss of life or bodily injury as a result of said livestock being on the above designated highways. The *burden* shall be on the *owner* of any such livestock *to prove lack of negligence*." Miss. Code Ann. § 69-13-111 (1991) (emphasis added). This statute, however, is not applicable to the case sub judice since Barrett's accident occurred on a county road. Barrett admits that the statute is inapplicable, and in order for him to prevail, he must prove that Parker's was negligent in allowing the calf to escape onto the road, rather than Parker having to prove his own lack of negligence.

> **I. The verdict of the jury is against the overwhelming weight of the evidence and contrary to the law.**
>
> **II. The verdict of the jury is contrary to the physical facts and the evidence presented in the case.**
>
> **III. In considering all of the evidence presented in this action in the light and with all reasonable inferences favorable to Parker, the evidence and the inferences are still so strongly and overwhelming in favor of William C. Barrett that reasonable men, unaffected by bias, passion and prejudice could only arrive at a verdict in favor of the plaintiff, William C. Barrett.**

¶9. "This Court will not set aside a jury verdict unless it is against the overwhelming weight of the evidence and credible testimony." *Adams v. Green*, 474 So.2d 577, 581 (Miss. 1985). "The jury is the judge of the weight of the evidence and the credibility of the witnesses." *Jackson v. Griffin*, 390 So.2d 287, 289 (Miss. 1980). "Because of the jury verdict in favor of [Parker], this Court resolves all conflicts in the evidence in his favor. This Court also draws in [Parker's] favor all reasonable inferences which flow from the testimony given." *City of Jackson v. Locklar*, 431 So.2d 475, 477 (Miss. 1983). "This court must assume that the jury drew every permissible inference from the evidence offered in favor of [Parker]." *Burnham v. Tabb*, 508 So.2d 1072, 1077 (Miss. 1987).

¶10. Because there is no direct evidence as to how Parker's calf was able to get onto the Purvis-Oloh Road, in order for Barrett to have prevailed in his negligence action, he had to prove Parker's liability through circumstantial evidence. Primarily through the use of photographs, Barrett attempted to prove to the jury that Parker's fence near the scene of the accident was in poor condition, thus allowing a means of escape for the calf which caused his accident. However, Parker countered with the testimony of Gene Hauck, Keith Powell and Dawn Parker, all of whom inspected the fence soon after the accident and said that it was in good condition. Additionally, Parker presented a video tape of the fence, taken two (2) days after the accident, which purported to show the jury that the fence was in good condition. Therefore, the evidence relating to the condition to the fence was in direct conflict.

¶11. Through the testimony of several witnesses who said they saw cattle roaming on the roads near Parker's ranch within twelve (12) months of the accident, Barrett also tried to prove that Parker was aware that he had a continuing problem with his cattle escaping from his fields onto the surrounding roads. However, none of these witnesses could affirmatively state that the cattle they saw on the roads belonged to Parker, and only some of them could say they saw cattle roaming near the accident site. Parker, on the other hand, presented testimony from several of his employees that they were not aware of any instances of

his cattle escaping onto the road in question. Therefore, the evidence regarding whether Parker was previously aware that he had a problem with his cattle escaping from their enclosures was also in direct conflict.

¶12. By its verdict, it appears that the jury, as judge of the weight of the evidence and the credibility of the witnesses, resolved the conflicts regarding the condition of Parker's fence and his alleged continuing problem of cattle escaping from his fields onto the public roads in his favor. In light of the evidence present in the record, such a resolution is not unreasonable. In accordance with *Locklar*, since the jury at trial found for Parker on these issues, this Court must also resolve these conflicts in Parker's favor. By resolving the aforementioned conflicts in Parker's favor, a verdict for Parker is not against the overwhelming weight of the evidence. Therefore, the jury's verdict in favor of Parker should not be disturbed on this ground.

> **IV. The plaintiff offered jury instruction P-13. The court modified the instruction and gave the modified instruction as jury instruction No. 9-A. The refusal of the court to grant plaintiff's instruction, as offered to the effect that the jury could consider stock loose in deciding the negligence of defendant, was erroneous.**

¶13. "Allegedly faulty jury instructions are not to be considered in isolation. Rather, the duty of an appellate court is to review all of the jury instructions and determine whether, in their totality, the instructions properly apprized the jury of the applicable law and the proper method of applying that law to the facts as determined by the jury." *Starcher v. Byrne*, 687 So.2d 737, 742 (Miss. 1997).

¶14. Barrett offered instruction P-13, which said "[t]he Court instructs the jury that evidence of prior accidents or stock loose from the enclosures may be considered by the jury in deciding the negligence of the Defendant and the condition of his fences." The trial court modified P-13 and gave it as 9-A which said "[t]he Court instructs the jury that evidence of stock having been loose from enclosures in the past may be considered by the jury in deciding the care taken in maintaining those enclosures." Barrett claims that the trial court erred in not allowing the jury to infer negligence on Parker's part based on prior incidents of loose cattle, if any such incidents would have been shown at trial. "Where defective fences or cattle guards have been shown, evidence of prior accidents or stock previously loose from enclosures may be admitted to show or indicate the *condition of the fence or guard*."*Hartford Ins. Group v. Massey*, 216 So.2d 415, 418 (Miss. 1968) (emphasis added). *Massey* makes no mention of allowing a jury to infer a cattle owner's *negligence* based on prior incidents of loose cattle. Therefore, P-13 was improper statement of the law as set forth in *Massey*. As mentioned above, the evidence did not prove that Parker's fences were defective at the time of the accident. However, even if he had proved such a defect, he still could not, under *Massey*, have the jury infer negligence by Parker from this. Therefore, the trial court did not err in modifying Barrett's jury instruction P-13 and instead giving jury instruction 9-A.

> **V. The court erred in granting jury instruction 6 and jury instruction 9 (originally D-5 and D-6, respectively). The granting of both of these instructions over-emphasized and duplicated the language relative to the owner's liability.**

¶15. Barrett contends that the trial court erred in giving jury instruction 6, which said:

> The Court instructs the jury that the mere fact that the yearling escaped from its enclosure and that an accident occurred is not, of itself, evidence of negligence on the part of Harold Parker and you should not infer negligence from the escape of the yearling from its enclosure or the occurrence of the

accident involving the plaintiff on Oloh-Purvis Road in Lamar County, Mississippi on June 24, 1996.

In support of his argument against this instruction, Barrett claims that since there is no direct proof of how the cow got out, the only way to prove negligence is by inference. While this may be a generally correct statement on Barrett's part, it is not applicable to this particular issue. The jury could infer negligence on Parker's part from other evidence aside from the fact that his yearling was out on the road, such as if his fence was in fact proved to be in poor condition. Furthermore, it would not be impossible for a cow to escape and get onto a nearby road even though its owner was not negligent in any manner in his confinement of the cow. Therefore, allowing the jury to infer negligence by Parker simply because his yearling was loose on the road would not be appropriate. Therefore, the jury was properly instructed with this instruction.

¶16. Barrett also contends that the trial court erred in giving jury instruction 9, which stated:

> You are instructed that the owner of a cow, which has escaped its enclosure and has become located upon a county public road is not necessarily liable for injuries sustained by a motorist who collides with such cow on the roadway. Rather, before a motorist can recover on his claim against the owner of the cow, he must prove by a preponderance of the evidence that the owner of the cow was negligent by proving that the owner:
>
> (1) failed to exercise reasonable care to keep the cow from being at large, and
>
> (2) that such failure, if any, resulted in the escape of the cow from its enclosure, and
>
> (3) that the cow owner's failure to exercise such reasonable care proximately caused injury to the motorist who collided with the cow.
>
> If you find that the plaintiff has failed to prove any of these three elements by a preponderance of the evidence, then your verdict must be for Harold Parker d/b/a H.P. Cattle Company.

¶17. This instruction correctly sets out the elements which a plaintiff must prove in order to prevail in a negligence action. Barrett claims that jury instructions 6 and 9 "over-emphasized and duplicated the language relative to the owner's liability." However, these two instructions say different things. Jury instruction 6 says that negligence can not be inferred just because the yearling got out onto the road, and jury instruction 9 sets out just what Barrett must show in order to prove Parker's negligence. These two instructions are proper statements of the law, they are not in conflict with one another, and they are not repetitive. Therefore, the trial court did not err in granting jury instructions 6 and 9 together, and the jury's verdict in favor of Parker should not be disturbed on this ground.

**VI. The restriction by the court on defendant's motion in limine limiting plaintiff's proof to instances of cows in the road to a period of one year prior to the accident, was erroneous.**

**VII. The court's refusal to allow plaintiff to show previous accidents involving defendant's cows at times exceeding one year prior to the accident, was erroneous.**

¶18. "Admission or suppression of evidence is within the discretion of the trial judge and will not be reversed absent an abuse of that discretion." *Sumrall v. Mississippi Power Co.*, 693 So.2d 359, 365 (Miss. 1997). "For a case to be reversed on the admission or exclusion of evidence, it must result in

prejudice and harm or adversely affect a substantial right of a party." ***Terrain Enter., Inc. v. Mockbee***, 654 So.2d 1122, 1131 (Miss. 1995). Regarding the admission of evidence of prior accidents for the purpose of showing a dangerous condition and notice thereof, this Court has held that "[i]n general, the admissibility is limited to conditions of permanency and the evidence must show that former accidents happened under substantially the same circumstances as those existing at the time of the accident." ***Massey***, 216 So.2d at 417.

¶19. Rather than absolutely prohibiting all evidence of incidents involving Parker's cattle, the trial court allowed Barrett to introduce this type of evidence as long as these alleged events occurred no more than one (1) year prior to Barrett's accident. This one-year limitation is reasonable under the holding in ***Massey***, as it is certainly possible that the circumstances surrounding any alleged incidents occurring more than one (1) year prior to Barrett's accident may not have existed when Barrett's accident happened. Furthermore, it is questionable whether Barrett could have even proved the incidents which he spoke of in his proffer, said incidents allegedly involving Parker's cattle more than one (1) year before Barrett's accident. He stated to the trial court that he "[thought] the proof would show" and that "Mr. Parker would admit" these alleged accidents. Barrett did not, however, purport to offer any evidence more concrete in nature, such as physical evidence, investigative reports of the alleged accidents, etc. Because Barrett was allowed to present some evidence of incidents allegedly involving Parker's cattle, and because it is questionable as to whether Barrett could have even proved the events he spoke of in his proffer, not allowing evidence of alleged incidents occurring more than one (1) year prior to the incident in question did not prejudice or harm Barrett. Therefore, the trial judge did not abuse his discretion with his Order in Limine, and that the jury's verdict in favor of Parker should not be disturbed on this ground.

¶20. Although Barrett did not specifically raise this as an assignment of error, he did argue in his brief that a change in the law regarding automobile-cattle collisions on county roads is needed. Barrett points out that had this incident occurred on a state or federal designated highway, he would have prevailed under Miss. Code Ann. § 69-13-111 (1991) unless Parker could have proved that he was not negligent in keeping his cattle. It is Barrett's contention that this Court should "create a presumption of negligence on cattle owners involving accidents that occur on county roads in Mississippi, the same burden placed on cattle owners involving accidents that occur on federal or state designated highways in this state." However, the Mississippi Legislature, as the law making branch of our government, has declined to create such a presumption; and there is no reason for this Court to do otherwise. Even if we were to adopt Barrett's position, it would not apply retroactively, and therefore, would have no bearing on his case. If Barrett truly wants such a change in the law, he should approach the Legislature, not this Court. Accordingly, the jury's verdict in favor of Parker should not be disturbed based on Barrett's policy argument for a change in the law.

## IV. CONCLUSION

¶21. For these reasons, this the judgment of the Lamar County Circuit Court is affirmed.

¶22. **AFFIRMED**.

> **PITTMAN, P.J., SMITH, MILLS AND COBB, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., BANKS AND WALLER, JJ.**

## McRAE, JUSTICE, DISSENTING:

¶23. This case should be reversed and remanded for a new trial because the trial court acted arbitrarily when it ruled that all similar incidents over a year old were inadmissible. Once the ownership of the cow had been established, the burden should be on the owner to prove that he was not negligent in allowing the cow out of his enclosed area.

¶24. Prior to trial, Parker filed a motion in limine to prevent testimony concerning other incidents of cows on or near the roadway near where Barrett's accident occurred. The trial court, without further explanation, ruled that "evidence of free roaming cattle on or adjacent to defendant's road frontage for a period of one year prior to the date of June 24, 1996" would be admissible. Barrett claims he was prejudiced by the trial court's ruling because there were at least three other incidents in which motorists ran into cows near Parker's farm and at least two of these occurred more than a year prior to Barrett's accident.

¶25. The trial court's ruling meant that any accident involving a cow near the Parker property that occurred within 365 days of Barrett's accident was admissible whereas an accident that occurred 366 days before Barrett's accident was not. This holding, adopted by the trial court without regard for the circumstances surrounding any accidents that may have occurred outside the one-year window, cannot be characterized as anything but arbitrary. The trial court would have done better to have determined, outside the presence of the jury, the exact nature of the circumstances surrounding the alleged prior accidents and made his ruling then - a ruling which would have permitted evidence of similar incidents and excluded incidents which were not sufficiently similar. Proximity in time certainly would be one factor in determining similarity but it should not be the single determinative factor as it was here.

¶26. Evidence of prior accidents is generally admissible to show both the existence of a dangerous condition and knowledge of the condition where the party offering the evidence can show substantial similarity of conditions. *Parmes v. Illinois Cent. Gulf R.R.,* 440 So.2d 261, 265 (Miss.1983). We held in *Hartford Ins. Group v. Massey*, 216 So.2d 415, 417 (Miss. 1968), that where defective fences or cattle guards have been shown, evidence of prior accidents or stock previously loose from enclosures may be admitted to show or indicate the condition of the fence or guard. While the trial court has discretion in determining whether the evidence of prior incidents is substantially similar, an arbitrary cut-off point for such incidents adopted by the trial court without reason is an abuse of that discretion. This is not to say that a trial court may not find that certain allegedly similar incidents are too remote in time to be truly similar.

¶27. The majority opinion states that the exclusion of this evidence did not harm Barrett. This, however, appears to be nothing but an assumption on the part of the majority. The trial court's decision to exclude all evidence of similar incidents over 365 days old was an arbitrary exercise of the trial court's discretion. This case should be reversed and remanded for a new trial on that basis.

¶28. Therefore, I dissent.

## SULLIVAN, P.J., AND BANKS AND WALLER, JJ., JOIN THIS OPINION.